**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAVID E. BARTINE and JUDITH S.
BARTINE, on Behalf of Themselves
and All Others Similarly Situated,

           Plaintiffs,

v.                                 Case No. 18-cv-01364-PGB-TBS

                                    HON. Paul G. Byron

                                    AMENDED CLASS ACTION
                                    DEMAND FOR JURY TRIAL

DIAMOND RESORTS MANAGEMENT, INC., aka and
dba DIAMOND RESORTS INTERNATIONAL, and FIRST
AMERICAN TITLE INSURANCE COMPANY, aka and dba
FIRST AMERICAN TITLE,

           Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs DAVID and JUDITH BARTINE ("Bartine" or "Bartines" or

"Plaintiff" or "Plaintiffs"), on behalf of themselves and all others similarly situated, and by and

through counsel, DC CAPITAL LAW, LLP, and file this AMENDED CLASS ACTION against

the above-listed Defendants, DIAMOND RESORTS MANAGEMENT, INC. ("DRM"), aka and

dba DIAMOND RESORTS INTERNATIONAL("Diamond"), and FIRST AMERICAN TITLE

INSURANCE COMPANY, aka and dba FIRST AMERICAN ("FATIC," collectively,

"Defendants"), on the grounds set forth herein:

**I.  PRELIMINARY STATEMENT**

1.    Plaintiffs allege that Defendants' collection practices violate both the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and The Florida Consumer

Collection Practices Act ("FCCPA"), 559.55 *et seq.*, statutes enacted expressly to protect consumers from the types of harm alleged herein. Defendants violated the FDCPA by, *inter alia*, sending Plaintiffs collection notices that failed to include the required Federal Dispute and Validation disclosures regarding Plaintiffs' statutorily protected rights to dispute the debt and seek verification thereof pursuant to 15 U.S.C. § 1692g.

2.      Importantly, the FDCPA and FCCPA expressly prohibit any further collection efforts while a request for validation or verification is pending. Defendants FATIC and Diamond and DRM improperly deprived Plaintiffs of the ability to make such a request. Defendants further violated both the FDCPA and FCCPA when it threatened to, and ultimately did, record a Claim of Lien in the public records of Orange County, Florida, in an amount having no basis in law or fact. The aforementioned statutes plainly state that debt collectors may only collect amounts that arise from a debtor's obligations to the creditor, not arbitrary costs and fees imposed by the debt collector.

3.      Despite having failed to properly notify Plaintiffs of their statutory rights to dispute the debt and seek validation thereof, Defendants generally (and FATIC specifically) nonetheless proceeded to improperly and impermissibly foreclose on the timeshare property interest— considered *in personam* personal property under Florida law—using an *in rem* proceeding in Orange County, Florida, in flagrant violation of both the FDCPA at 15 U.S.C. § 1692g(b) and the FCCPA. **Please see Exhibits 1, 2, 3, and 6.**

4.      Without having provided Plaintiffs with an opportunity to verify and dispute the alleged debt, Defendants recorded a lien in the amount of $683.59 in the public records of Orange County, Florida. The FDCPA requires not only that debtors be given the right to dispute the debt and seek verification thereof, but also, *inter alia*, that the debt collector demonstrate its authority

to recover the alleged debt from the debtor in the first place. *See* 15 U.S.C. §§ 1692g(a)1-5 1692g(b). Defendants failed to properly comply with any of those provisions.

5.　　In numerous similar cases and foreclosure actions throughout the State of Florida, Defendants have deployed a "Four Letter Collection Process," an unlawful scheme that begins with sending debtors a "Final Notice" letter from Defendant DRM and ultimately results in Florida residents and timeshare owners having false, unverified default amounts placed in the public records to their detriment. In every such case, Defendants claim, without authorization or contractual justification, that the alleged debtor—including the Plaintiffs named herein, and many other similarly situated Florida residents—owe $1,100.00 in additional, unauthorized collection fees and foreclosure costs—regardless of each debtor's default amount—that have no basis in law or fact. In addition to the obviously predatory nature of these baseless fees and costs, Defendants routinely and repeatedly fail to properly notify the subject debtors of their rights to dispute and seek verification of the alleged debt in clear violation of the FDCPA and FCCPA. **Please see Exhibits 1, 2, 3 and 6**.

6.　　Further violative collection practices committed by Defendants include, *inter alia*, sending Plaintiffs written communications that:

>(a)　　make false, deceptive, and misleading representations that Defendants are authorized and permitted by law to record a lien against Plaintiffs as threatened by Defendant in **Exhibits 1, 2 and 3 and 6**;
>
>(b)　　attempt to collect arbitrary costs and legal fees without any basis in law or fact, as such additional costs or fees have no connection to Plaintiffs' contractual obligations to the creditor—and no connection to each debtors' default amount—and are therefore not recoverable from Plaintiffs by

Defendants (please note references to "Other Costs" or "Costs of Collection" in **Exhibits 1, 2 and 3**;

(c)  threaten adverse consequences to Plaintiffs' credit history and reports if the unlawful and unsubstantiated lien amounts sought by Defendants are filed with a public record, or the unlawful foreclosure action threatened by Defendants takes place as discussed in **Exhibit 6**;

(d)  threaten to update public records to reflect false, unlawfully calculated debt amounts allegedly owed by Plaintiff, or to expose false and private debt information to the public and third parties in violation of 15 U.S.C. §§ 1692c(b) and 15 U.S.C. § 1692f (1), including the unlawful and unauthorized "foreclosure" costs and fees; and

(e)  fail to adhere to the requirements of 15 U.S.C. § 1692g, which mandate that debt collectors, including Defendants, must provide Plaintiffs with an opportunity to dispute the alleged debt and seek verification thereof. Furthermore, 15 U.S.C. § 1692g(b) requires that any debt collector, including Defendants, must cease all collection efforts once verification is sought. In the instant case, due to the manner in which Defendants unlawfully crafted their collection notices, Plaintiffs were not afforded the opportunity to seek such verification in violation of 15 U.S.C. § 1692g(b).

## II.  RELEVANT STATUTES AND CASE LAW APPLICATION

7.     The FDCPA regulates the behavior of debt collectors that seek to collect debts on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that

abusive debt collection practices contribute to a number of social and financial issues, including personal bankruptcies, marital instability, loss of employment, emotional distress, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) through (e).

8.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of even just one violation. Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether a Defendant's conduct violates the FDCPA. "A debt collector's failure to provide the information required by § 1692g is actionable as a violation of § 1692e 'if the variance is one that would tend to mislead the least sophisticated consumer.'" *Leonard, 2017 WL 4979160, at \*4 (quoting Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1304 (11th Cir. 2014)).

9.      The "least sophisticated consumer" standard assumes that the consumer "posses[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Leonard*, 2017 WL 4979160 at \*2 (alteration in original) (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-94 (11th Cir. 2010) and *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)). Using this standard, the FDCPA protects "naïve consumers" while at the same time "prevent[ing] liability for bizarre or idiosyncratic interpretations of collections notices by preserving a quotient of reasonableness." Id. (quoting *LeBlanc*, 601 F.3d at 1194.)

10.      To reduce the use of unconscionable and unfair practices by debt collectors, the FDCPA at 15 U.S.C. § 1692f prohibits the use of unfair or unconscionable means to collect or

attempt to collect any debt and enumerates a non-exhaustive list of unconscionable or unfair debt collection practices that constitute *per se* violations of the statute. 15 U.S.C. §§ 1692f (1)-(8). Included among the *per se* violations prohibited by this section are the attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly permitted by law, 15 U.S.C. § 1692f (1).

11.     Numerous federal courts have acknowledged that foreclosure actions fall within the purview of debt collection activities. "In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453 (6th Cir. 2013). *See also Goodrow v. Friedman & MacFadye*n, P.A., 788 F. Supp. 2d 464, 471 (E.D. Va. 2011) ("[A] debt collector must comply with the FDCPA while complying with a state foreclosure law."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998).

12.     The Federal Trade Commission, in its commentary on the FDCPA, carved out an exception to § 1692a(6)(F)(i) for the collection of debts that are incidental to a bona fide fiduciary or escrow relationship. This exception "applies to entities such as trust departments of banks" and "escrow companies," but does not include "a party who is named as a debtor's trustee solely for the purpose of conducting a foreclosure sale," such as FATIC here. Consequently, Defendants are not subject to any exception to the FDCPA. *See* Statements of General Policy or Interpretation — Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50103 (Fed. Trade Comm'n Dec. 13, 1988). *Harris v. Liberty Community Mgmt., Inc.*, 702 F.3d 1298 (11th Cir. 2012).

13.     To properly assert a violation of the FDCPA, the Plaintiffs must allege that (1) they have been the objects of collection activity arising from consumer debt, (2) the Defendant(s) are debt collectors as defined by the FDCPA, and (3) the Defendant(s) have engaged in an act or omission prohibited by the FDCPA. *Salazar v. MFP, Inc.*, 847 F.Supp.2d 1329, 1331 (M.D. Fla. 2012) (internal quotations and citations omitted).

14.     Trustees pursuing foreclosure actions are debt collectors within the meaning of the FDCPA. *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 359 (4th Cir. 2016). Importantly, the FDCPA "does not include any requirement that a debt collector be engaged in an activity by which it makes a demand for payment," and thus includes trustees pursuing foreclosure actions within its purview. *Id.*

15.     A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. *Reese v. Ellis, Painter, Ratterree & Adams*, 678 F.3d 1211 (11th Cir. 2012).

16.     Here, Defendant DRM was hired by The Cypress Pointe II Condominium Association, Inc. (hereinafter the "Association"), a Florida non-profit corporation as a debt collector for the sole purpose of collecting delinquent maintenance fees from timeshare owners in "Final Notices" and through the recording of liens and initiation of foreclosure proceedings in cooperation with Defendant FATIC. However, in performing such work for the Association, Defendants arbitrarily and unlawfully imposed various additional fees that have no connection to the original contract between Plaintiff and the developer, Sunterra Corporation. Please see references to "Other Costs" in the amount of $250 at **Exhibit 1**, a "Foreclosure Processing Fee" of $200 at **Exhibit 2**, and "Estimated Foreclosure Costs" of $650 at **Exhibit 3** for a total of $1100

in unauthorized costs per account sent to collections.

17.    The Florida Consumer Collection Practices Act (FCCPA), 559.55 *et seq.*, is an act promulgated to regulate the conduct of debt collectors; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines in furtherance of protecting consumers from unfair collection practices. Importantly, "in applying and construing" the FCCPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Florida Statutes at 559.77(5).

18.    Under the FCCPA, 559.77(1) and (2), a person who suffers injury, loss, or damage, or from whom money was collected using a method, act, or practice in violation of this act may bring an action for actual damages and for additional statutory damages of up to $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the Defendant's liability for any additional damages arising from a claim brought under this subsection, the court shall consider the nature of the Defendant's noncompliance with the FCCPA, the frequency and persistence of such noncompliance, and the extent to which such noncompliance was intentional.

19.    A Debt Collector means any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The term "debt collector" includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts. Florida Statutes§ 559.55 (6). Defendants are both considered debt collectors within the

meaning of the FDCPA and FCCPA as a result of their "Final Notices" and FATIC's attempts to foreclose on the timeshare interest.

20.      "Debtor" or "consumer" means any natural person obligated or allegedly obligated to pay any debt. Florida Statutes, Sections 559.55 (2).  Plaintiffs are debtors under the FCCPA and FDCPA.

21.      In the instant case, Defendant violated numerous provisions of the FCCPA through its unlawful conduct, including, but not limited to, when it:

a.      violated 559.72 (5) by threatening to communicate private and false debt information to the public generally and did so through **Exhibits 1, 2 and 3**;

b.      violated 559.72 (9) by claiming, attempting, or threatening to enforce a debt when it knew the debt was not legitimate, and asserting the existence of some other legal right when it knew that the right does not exist, through **Exhibits 1, 2 and 3**;

c.      violated 559.72 (13) by threatening to advertise the sale of the timeshare property and make publicly available false debt amounts allegedly owed by Plaintiff as an unlawful means to expedite payment of a debt through **Exhibits 1, 2, 3, and Exhibit 6**; and

d.      violated 559.72 (14) by threatening to communicate and publish private and false debt information to the public generally and did so through **Exhibits 1, 2, 3, and 6**.

22.      "Communicate" under both the FDCPA and FCCPA means the conveying of information regarding a debt directly or indirectly to a person through any medium. Defendants are communicating demands for payment of a debt through their notice letters, use of foreclosure proceedings, and threatened consequences to Plaintiffs' credit score. Please see **Exhibits 1, 2, 3, and 6.**

23.    Among the ***per se*** violations prohibited by the FDCPA is 15 U.S.C. § 1692c(b):

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, ***a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector***.

24.    Among the ***per se*** violations prohibited by the FDCPA is 15 U.S.C. § 1692f (6):

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

**(A)**    there is no present right to possession of the property claimed as collateral through an enforceable security interest;

**(B)**    there is no present intention to take possession of the property; or

**(C)**    the property is exempt by law from such dispossession or disablement.

25.    15 U.S.C. § 1692g provides:

### § 1692g. Validation of debts

**(a)    Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

**(1) the amount of the debt**;
**(2)** the name of the creditor to whom the debt is owed;
**(3)** a statement that unless the consumer, **within thirty days *after receipt* of the notice**, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
**(4)** a statement that if the consumer notifies the debt collector **in writing within the thirty-day period** that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request **within the thirty-day period**, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b)** **Disputed debts.** If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, ***the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment***, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

26.    The validation notice may not be either "overshadowed" or contradicted by other language or material, either within the original collection letter or in any subsequent collection letters sent within 30 days after the debtors' receipt of the first one. *Swanson v. Southern Oregon Credit Service, Inc.,* supra, 869 F.2d 1222 (9th Cir. 1988); *Harris v. Payco General American Credits, Inc.,* 98 C 4245, 1998 U.S. Dist. LEXIS 20153 (N.D. Ill. Dec. 9, 1998). Importantly, "a notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Russell v. Equifax A.R.S.,* 74, F.3d 30 (2d Cir. 1996).

27.    Numerous courts have recognized that the FDCPA's purpose—to eliminate abusive debt collection practices—would be frustrated and undermined if subsequent debt collectors were excused from complying with the requirements contained in section 1692g. *Wright v. Ocwen Loan Servicing, LLC*, 12-14762, 2013 WL 5532687, at 4-5 (E.D. Mich. Oct.7, 2013), See also *Lewis v. Nationstar Mortgage,* 2014 WL 1089557, at 7-10 (E.D. Mich. March 18, 2014).

28.    Section 1692g(a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector **must** obtain verification of the debt and must send the debtor a copy of the verification (emphasis added). Subsection (a)(5) states that, if the debtor makes a written

request, the debt collector must provide the name and address of the original creditor.

**Subsection (b)** states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. *Graziano v. Harrison*, 950 F. 2d 107 (3d Cir. 1991). Critically, each of the foregoing requirements are mandatory rather than permissive; the debt collector is unequivocally obligated by the FCDPA to act in accordance with its provisions.

29.   The FDCPA's bona fide error defense at 15 U.S.C. § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of a legal requirement of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611-12 (2010). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983).

30.   Additionally, Federal Trade Commission (FTC) guidance—to which Florida courts give "due consideration and great weight" when analyzing debt collection matters—is clear on the point that, with "Right to Use" or "Fixed or Floating Time" purchases of timeshare condominiums, "The interest you own is legally considered personal property. Federal Trade Commission, Consumer Information, Timeshares and Vacation Plans, *https://www.consumer.ftc.gov/articles/0073-timeshares-and-vacation-plans*. **Please see Exhibit 4**. As previously noted at Paragraph 17, *supra*, Florida courts give great deference to FTC guidance in interpreting the FCCPA. Thus, Plaintiff's timeshare is a personal property interest rather than a real property interest.

31.     Florida's timeshare statute provides, in relevant part, that "personal property timeshare plans" shall not be subject to liens for overdue assessments, work performed, or materials provided. *See* Florida Statutes §721.16, Liens for overdue assessments; liens for labor performed on, or materials furnished to, a timeshare unit:

> 721.16(6)     ***This section shall not apply to personal property timeshare plans***.

32.     Through their "Four Letter Collection Process," Defendants teamed up to threaten Plaintiffs and similarly situated Florida timeshare owners with filing baseless, unverified liens in the public records across the State of Florida and have unlawfully and impermissibly sought to foreclose on an *in personam* interest through an *in rem* proceeding in flagrant contravention of both the FDCPA and FCCPA as stated above and below.  **Please see Exhibits 1, 2, 3 6**.

33.     At all times relevant to this complaint, Defendant FATIC has been and remains a debt collector within the meaning of the FDCPA and the FCCPA, collecting debts on behalf of timeshare and condominium associations, and is incorporated in the State of Nebraska with a Resident Agent listed as Chief Financial Officer, 200 E. Gaines St., Tallahassee, Fl., 32399.

34.     Diamond/DRM is an Arizona professional corporation that manages condominiums and resorts, offers them collection or receivables services, and uses interstate commerce for the principal purpose of collecting condominium and resort debt through its "Final Notices" and foreclosure efforts in cooperation with Defendant FATIC. **Please see Exhibits 1, 2, 3 and 6**. Through the use of this "Four Letter Collection Process," Defendants are debt collectors within the meaning of both the FDCPA and FCCPA.

35.     The Bartines are natural persons who purchased a condominium timeshare that is the subject of the debt located in Orange, Florida and are both "consumers" and "persons" as the terms are defined and used in the FDCPA. **Please see Exhibit 4, Warranty Deed**.

## III. JURISDICTION & VENUE

36.   Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337.

37.   Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. §1367. The factual basis of the FCCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a). Additionally, as previously noted at Paragraph 17, *supra*, Florida courts give great deference to FTC guidance and the interpretations of federal courts analyzing FDCPA matters when considering FCCPA cases.

38.   Declaratory relief is available under 28 U.S.C. §§ 2201, 2202.

39.   Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the debt collection activities giving rise to Plaintiff's FDCPA and FCCPA claims occurred within this federal judicial district.

## IV. FACTS CONCERNING PLAINTIFF

40.   On or about May 10, 1999, Plaintiffs allegedly incurred a financial obligation on the purchase of a timeshare condominium from the SELLER/DEVELOPER, Sunterra Corporation ("Developer"). **Please see Exhibit 4**.  Plaintiff received a warranty deed supposedly transferring property from the Developer to Plaintiffs in Orange County, Florida.

41.   The warranty deed at **Exhibit 4** states that the Plaintiff agrees to abide by the Rules of the Declaration of Condominium recorded in Orange County at Official Records Book 5044, at Page 3557 (the "Declaration") as shown at **Exhibit 5**.

42.   The Declaration referred to in the special warranty deed, however, reveals the deed to be invalid and incapable of transferring any real property interest to the Plaintiff. **Exhibit 5.**

43.   The Declaration at **Exhibit 5** shows that the property "ownership" granted to Plaintiff is categorized as a "Floating" ownership. The Declaration states that contrary to what Plaintiffs and other timeshare customers believed they were receiving by executing the Warranty Deed or Purchase Contract, "no Timeshare Owner shall have the exclusive right to use and occupy the specific Unit identified in his Warranty Deed for any particular Vacation Week(s) or Split Vacation Period(s) unless a specific "Fixed Vacation Week is specifically identified in such Timeshare Owner's Warranty Deed," as shown here:

> **6.2   Occupancy and Constructive Possession of Units Committed to Vacation Ownership.** Except as provided below, this Declaration creates a "Floating" vacation ownership plan for all Timeshare Owners.  Notwithstanding any provision of the Project Instruments, including a Timeshare Owner's Warranty Deed and Purchase Contract, to the contrary, no Timeshare Owner shall have the exclusive right to use and occupy the specific Unit identified in his Warranty Deed for any particular Vacation Week(s) or Split Vacation Period(s) unless a specific "Fixed" Vacation Week is specifically identified in such Timeshare Owner's Warranty Deed.  Rather, each Timeshare Owner shall have the recurring exclusive right, either every calendar year or during alternate calendar years, commencing with the calendar year set forth in such Timeshare Owner's Purchase Contract, to use and occupy an Assigned Unit (though not necessarily the specific Unit identified in his Warranty Deed), as well as the Limited Common Elements and Common Furnishings located within such Unit and the non-exclusive right to use and enjoy the Common Elements of the Project, for their intended purposes, during (i) in the case of "Floating" Timeshare Interests, (A) such Vacation Week or one (1) or more Split Vacation Periods (up to a maximum of seven (7) days and nights) with respect to Timeshare Owners who purchase entire Vacation Weeks; or (B) a Split Vacation Period with respect to Timeshare Owners who purchase a three (3) or four (4) consecutive day and night Split Vacation Period, in the Designated Season set forth in such Timeshare Owner's Warranty Deed, as shall properly have been reserved by him in

**Exhibit 5 at Page 12**.

44.   According to the Declaration and the Warranty Deed, taken together, Plaintiffs— and those similarly situated class members receiving deeds of this type—have a "Floating" vacation ownership and not a "Fixed" vacation ownership. **Please see Exhibit 4 and 5**.

45.    The Declaration goes so far as to expressly state that Floating Timeshare use Unit Week owners, including Plaintiffs, shall have no right whatsoever to occupy a particular unit, even the one specifically mentioned in the Warranty Deed:

> "Rather, each Timeshare Owner shall have the recurring exclusive right, either every calendar year or during alternate calendar years, commencing with the calendar year set forth in such Timeshare Owner's Purchase Contract, to use and occupy an Assigned Unit (***though not necessarily the specific Unit identified in his Warranty Deed***), as well as the Limited Common Elements and Common Furnishings located within such Unit and the non-exclusive right to use and enjoy the Common Elements of the Project, for their intended purposes, during (i) in the case of "Floating" Timeshare Interests, (A) such Vacation Week or one (1) or more Split Vacation Periods (up to a maximum of seven (7) days and nights) with respect to Timeshare Owners who purchase entire Vacation Weeks; or (B) a Split Vacation Period with respect to Timeshare Owners who purchase a three (3) or four (4) consecutive day and night Split Vacation Period, in the Designated Season set forth in such Timeshare Owner's Warranty Deed, as shall properly have been reserved by him in accordance with the provisions of the then-current Rules and Regulations, ***without regard for the specific Vacation Week number identified in his Warranty Deed***." __Please see Exhibit 5, emphasis added Page 12-13__.

46.    Instead, despite the warranty deed's representations that timeshare "owners" had the right to occupy a particular unit during a particular week, the reality is that Plaintiffs, and those similarly situated timeshare owners, can only use "assigned" units—a striking misnomer, as the true meaning appears to be just the opposite—at the sole discretion of the Association, and in a non-exclusive fashion that guarantees neither a particular unit nor a particular week.

47.    The Federal Trade Commission (FTC) differentiates between Deeded Timeshare Ownership, which Plaintiff does not have, and a "Right to Use" Vacation Interval Option, which is what Plaintiffs in fact purchased from Developer.  As previously noted at Paragraph 17, *supra*, Florida courts give great deference to FTC guidance in interpreting the FCCPA. Thus, the following FTC guidance, accessible at *https://www.consumer.ftc.gov/articles/0073-timeshares-and-vacation-plans*, and attached hereto at **Exhibit 4**, is illustrative:

**Deeded Timeshare Ownership.** In a timeshare, you either own your vacation unit for the rest of your life, for the number of years spelled out in your purchase contract, or until you sell it. Your interest is legally considered real property. You buy the right to use a specific unit at a specific time every year, and you may rent, sell, exchange, or bequeath your specific timeshare unit. You and the other timeshare owners collectively own the resort property.

**"Right to Use" Vacation Interval Option.** In this option, a developer owns the resort, which is made up of condominiums or units. Each condo or unit is divided into "intervals" — either by weeks or the equivalent in points. You purchase the right to use an interval at the resort for a specific number of years — typically between 10 and 50 years. The interest you own is legally considered personal property. The specific unit you use at the resort may not be the same each year. In addition to the price for the right to use an interval, you pay an annual maintenance fee that is likely to increase each year.

Within the "right to use" option, several plans can affect your ability to use a unit:

**Fixed or Floating Time.** In a fixed time option, you buy the unit for use during a specific week of the year. In a floating time option, you use the unit within a certain season of the year, reserving the time you want in advance; ***confirmation typically is provided on a first-come, first-served basis***. (emphasis added)

<u>**Please see Exhibit 4.**</u>

48.     Pursuant to Florida timeshare law, non-judicial foreclosures can only be pursued an *in rem* proceeding—a proceeding brought against a real property interest—with a notice of intent to lien and then foreclose allowed before a judgment or decision is entered. Florida Statutes 721.01, *et seq.*

49.    Here, as the Declaration expressly states at **Exhibit 5**, Plaintiff's property is personal, and there is no ownership interest or exclusive right to use or possess anything besides the ability to request a reservation for an assigned unit. The non-exclusive "floating use" nature of the property or timeshare means that such a property interest can only be "taken" from Plaintiffs or Florida residents *in personam*—as personal property—not by a foreclosure proceeding. Divesting Plaintiffs of their floating timeshare interest *in personam* would require that a judgement have been entered ***prior*** to any lien predicated on that judgement being filed.

50.    Here, Defendants are filing liens against the named Plaintiffs and their potential Florida class members on *in personam* property—specifically, floating use timeshare interests— without any judgment having been entered beforehand. Subsequently, Defendants have foreclosed, or threatened to foreclose, on such property interests in violation of the FDCPA and FCCPA, while also unlawfully seeking the aforementioned unauthorized, unsubstantiated costs and foreclosure fees of $1100. **Please see Exhibit 7 showing similarly situated Florida residents receiving the Final Notices and demands for the "other costs" and collection fees amounting to $1100, regardless of each individual debtor's alleged default amount**.

51.    Under Section Florida Statutes 721.16(6), Plaintiff's personal property interest is not subject to foreclosure as real property, a fact already known to Defendants when they unlawfully threatened Plaintiff with the correspondence and proceedings threatened and later pursued, as shown in **Exhibits 1, 2, 3, and 6.**

52.    The Bartines, upon wishing to discontinue their time ownership, were unable to negotiate an exit from the resort on their own. Subsequently, they hired an attorney to negotiate a rescission of their timeshare contract.

a.  **Liability of Diamond/DRM as a debt collector under the FDCPA and FCCPA.**

53.    When a timeshare owner defaults on the demand to pay the Maintenance and Association fees for a Diamond International property, Defendants employ the aforementioned "Four Letter Collection Process," which culminates in Plaintiff class members having their public, financial reputation damaged in the public record, while also facing Defendants' improper and unlawful demands for the payment of $1100 in "other costs" and collection and foreclosure fees, despite such costs having no basis in law or fact.

54.    Defendants DRM and FATIC employ this unlawful strategy as part of their routine debt collection operations. This approach flagrantly violates not only the FDCPA and FCCPA, but also Florida's timeshare statute. As discussed above, Defendants begin by sending collection notices that do not conform to the requirements of the FDCPA and FCCPA, depriving debtors of any opportunity to advocate for themselves, and then proceed to threaten and pursue improper foreclosure actions against class members across the State of Florida.

55.    In numerous similar cases and foreclosure actions throughout the State of Florida, Defendants have deployed a "Four Letter Collection Process," an unlawful scheme that begins with sending debtors a "Final Notice" letter from Defendant DRM and ultimately results in Florida residents and timeshare owners having false, unverified default amounts placed in the public records to their detriment. In every such case, Defendants claim, without authorization or contractual justification, that the alleged debtor—including the Plaintiffs named herein, and many other similarly situated Florida residents—owe $1,100.00 in additional, unauthorized collection fees and foreclosure costs—regardless of each debtor's default amount—that have no basis in law or fact. In addition to the obviously predatory nature of these baseless fees and costs, Defendants

routinely and repeatedly fail to properly notify the subject debtors of their rights to dispute and seek verification of the alleged debt in clear violation of the FDCPA and FCCPA.

56.    Here, as in the case of most class members, the maintenance fees on Plaintiffs' timeshare account went into default. On or about February 16, 2018, the Defendant DRM sent a letter to Plaintiff's attorney seeking a payment of $553.32 and stating that it was a "Final Notice" and that Plaintiffs had 30 days to either pay up or face a foreclosure action, incurring additional collection and legal fees.  **Please see Exhibit 6**.  The letter had a return address for Cypress Pointe and an address for Diamond Resort Management of 10600 West Charleston Boulevard, Las Vegas, Nevada 89135.

57.    The letter at **Exhibit 6** further stated that

**No further notice will be sent**.

Important Notice: a foreclosure action filed in the public records, regardless of its disposition, may adversely affect your credit rating.

58.    Unbelievably, the letter marked "Final Notice" at **Exhibit 6** was the very first correspondence of any kind that Plaintiffs received from Defendant DRM.

59.    The reference to "30 days" in the letter is curious and clearly demonstrative of Defendant's awareness of the fact that the Federal Notice of Dispute and Verification grants debtors 30 days to dispute or seek verification of the debt or payment a debt collector seeks under 15 U.S.C. § 1692g but falls well short of actually complying with the statute; indeed, the letter is clearly intended to coax an immediate payment out of the recipient rather than to inform them of the time available to them to dispute the debt and seek verification thereof, which rights are guaranteed by the FDCPA and FCCPA. **Please see the Federal Statute at Paragraph 25**.

60.    Defendant DRM became involved in the foreclosure process as a debt collector, as shown in **Exhibit 1**, when it informed the Plaintiffs that "This matter will be sent over to a collection agency, which may result in additional collection and legal fees, and we will initiate foreclosure proceedings."  Please see the notice at **Exhibit 6**.

  b.    **Liability of Defendant First American and DRM under the FDCPA and FCCPA**

61.    On or about April 6, 2018, the Bartines received a letter from Defendant First American (FATIC) from address 400 S. Rampart Blvd. Ste. 290, Las Vegas, 89145. **Please see Exhibit 1**. The letter stated that it was from First American Title Insurance Company, "Vacation Ownership Services Division" and had 1 attached document.

62.    Included with the letter at **Exhibit 1** were documents written by either Diamond Resorts International or DRM stating that "This letter shall serve as the association's notice of intent to record a Claim of Lien against your property no sooner than 30 days after receipt of this letter, unless you pay in full the amounts set forth below," which letter is excerpted here:

**NOTICE OF INTENT**
**TO RECORD A CLAIM OF LIEN**

RE: Unit D27AB / Week 22 / Odd Year Biennial Timeshare Interest of Cypress Pointe Resort II Condominium Association, Inc., a Florida not-for-profit corporation.

This Notice is being sent on behalf Cypress Pointe Resort II Condominium Association, Inc., a Florida not-for-profit corporation, ("Association").

The following amounts are currently due on your account to Cypress Pointe Resort II Condominium Association, Inc., a Florida not-for-profit corporation, and must be paid within 30 days after your receipt of this letter. This letter shall serve as the association's notice of intent to record a Claim of Lien against your property no sooner than 30 days after your receipt of this letter, unless you pay in full the amounts set forth below:

Maintenance due  (01/01/2018-present)     $ 1,367.18

Late fee, if applicable   $ 0.00

Interest through  (01/01/2018-present) *  $ 0.00

Certified mail charges:    $ 0.00

Other Costs   $ 250.00

**Please see Exhibit 1**.

63.    The letters from Defendant DRM and FATIC also advised Plaintiff that it was from a debt collector, but ***failed to alert Plaintiff to any right to dispute or seek validation of the debt***, even as Defendant attempted to seek "other costs" of $250 not arising from any contractual obligations under 15 U.S.C. § 1692f(1) or state law:

> Note: The amount of maintenance fees due within thirty (30) days of the receipt of this letter may differ from the amount that will be secured by the Claim of Lien.
>
> NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.  NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY OF THE ABOVE STATED AMOUNTS MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.

**Please see Exhibit 1**.

64.    On or about May 17, 2018, Defendant FATIC sent Plaintiffs a Notice of Default and Intent to Foreclose, advising the Bartines that a Claim of Lien was recorded "in the Public Records of Orange County, Florida, thereby perfecting the lien of Assessments, Fees, and Taxes pursuant to the Declaration and sections 721.16 and 192.037 Florida Statutes." The letter had an Attachment (Schedule 1) showing the Default Amount of $683.59 was recorded on May 16, 2018 and did not include future "foreclosure processing fees." **Please see Exhibit 2**.

65.    The Letter at **Exhibit 2** was also from Defendant FATIC's "Vacation Ownership Services Division" and sought payment of the amount in default along with a "foreclosure processing fee of $200, which amount will increase as the foreclosure proceeding progresses." None of these arbitrary, unsubstantiated costs are subject to collection from Plaintiff's original contract with Sunterra Corporation or allowed to be assessed by law under 15 U.S.C. § 1692f(1).

66.    Further, Defendant's letter at **Exhibit 2** stated it was from a Debt Collector collecting a debt using the same notification language as the letter at **Exhibit 1**:

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY ONE OR MORE OF THE LIENS DESCRIBED ON EXHIBIT 'A' HERETO MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.

The Association has appointed the following Trustee to conduct the trustee's sale:

**First American Title Insurance Company, a Nebraska corporation**, duly registered in the state of Florida as an Insurance Company, 400 S. Rampart Blvd, Suite 290, Las Vegas, NV, 89145, **(866) 505-9107**

67.     Once again, this letter failed to include any reference to Plaintiff's right to dispute and verify the debt as required by the FDCPA at 15 U.S.C. § 1692g.

68.     Further, after Defendant FATIC violated the Plaintiff's rights under the FDCPA, specifically the Plaintiffs right to dispute and verify the debt, and to be spared any further collection efforts unless and until the debt was verified,  Defendant continued collection efforts on the debt including subsequent demands for payment and the unlawful foreclosure against a personal property interest in violation of the FDCPA, FCCPA, and in flagrant contravention to FTC guidance.

69.     Specifically, the FDCPA states at 15 U.S.C. § 1692g(b) as follows and has a mandatory cease and desist on collection efforts once the debtor is afforded the opportunity to dispute and seek verification of the debt:

**DISPUTED DEBTS**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, ***the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment***, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

70.    The unlawful failure of Defendants DRM and FATIC to include the mandatory dispute and verification notice in their letters prevented Plaintiffs from meaningfully advocating for themselves or otherwise disputing or seeking verification of the debt, essentially opening a loophole through which Defendants felt they could—and, indeed, do—continue their improper collection efforts with impunity.

71.    In this case, Defendants felt they did not have to "***cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment***," under 15 U.S.C. § 1692g(b) if there was no pending dispute or request for verification (emphasis added).

72.    Essentially, Defendants have circumvented Plaintiffs' (and similarly situated Florida class members') Federal rights to be free from continued unfair collection practices by failing to even afford them the opportunity to dispute or verify the alleged debt in the first place.

73.    The lack of a consumer dispute or demand for verification allows a debt collector to continue with its collection efforts unfettered and to pursue any payment amounts it wants—no matter how unlawful—as Defendants continued to do when they initiated and continued the foreclosure and collection process as outlined herein.

74.    As a result of their violations of 15 U.S.C. § 1692g(b), wherein Defendants failed to give Plaintiffs an opportunity to dispute the debt in the first place, Defendants were able to forge ahead with improperly recording a lien in the public records and improperly foreclosing on Plaintiffs' personal property interest in contravention to Florida law.

75.    Indeed, Defendant caused a lien in the defaulted amount of $683.59 to be recorded in the public records of Orange County, Florida, without giving Plaintiff the statutorily guaranteed rights to dispute and seek verification of the debt, or Defendant's authority to pursue the same,

under 15 U.S.C. §§ 1692g(a)1-5. **The amount charged as a lien against the Plaintiffs had no basis in fact or contractual authorization**.

76. Nonetheless, Defendant FATIC continued its unlawful and improper collection efforts and even went so far as to set a date for the timeshare interest to be sold in a letter dated July 2, 2018. **Please see Exhibit 3**. The letter again warned that a Claim of Lien was recorded "in the Public Records of Orange County, Florida, thereby perfecting the lien of Assessments, Fees, and Taxes pursuant to the Declaration and sections 721.16 and 192.037 Florida Statutes."

77. This time at **Exhibit 3**, Defendant sought "*estimated foreclosure costs in the amount of $650.00 and must be delivered by cash or certified funds to the Trustee*." Again, Defendant FATIC plainly stated that the communication was an attempt to collect a debt, but failed to include all of the notices required by the FDCPA:

> NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED. NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY ONE OR MORE OF THE LIENS DESCRIBED ON **SCHEDULE "1"** HERETO MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.

**Please see Exhibit 3**.

78. The letters at **Exhibits 1, 2 and 3** were from the Defendant in its capacity as Trustee in foreclosing upon Plaintiff's interest and seeking payment on a defaulted debt, and therefore fall within the purview of the FDCPA and FCCPA. **Each letter sought payments**.

79. After the second letter at **Exhibit 2**, Plaintiffs' attorney sent a letter to Defendant FATIC asking it to follow Federal law and provide a legal or contractual basis on why it was collection the debt and add costs on to the foreclosure process. **Please see Exhibit 8**.

80. Defendant FATIC sent back a response back by email that did not match up with

the amounts supposedly owed by Plaintiff with any of the letters sent by Defendants. Please see **Exhibit 9**. The amount of $713.07 was not the same as the amount in the Exhibit 1 as required under 15 U.S.C. § 1692g(a)1-5 and included additional unfounded "Collection Fees" never before stated in the letters at **Exhibit 1, 2, 3 and 6**.

81.    Until a debt amount is properly validated, all collection efforts must cease under 15 U.S.C. § 1692g(b). **Please see the statute at Paragraph 25**.

82.    In 2014, the Sixth Circuit expanded dispute verification rules under the FDCPA with *Haddad* v. *Alexander, Zelmanski, Danner & Fioritto, PLLC,* 758 F. 3d 777 (6th Cir. 2014). The *Haddad* Court announced a new standard for verification under § 1692g(b), holding that "the verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation." *Haddad* at 785-786.

83.    The *Haddad* Court went on to say further that such a notice requirement has the advantage of providing a clear standard that courts are accustomed to enforcing and can apply easily. Moreover, in today's world of computerized records management, it would not be a significant burden to debt collectors or creditors to provide such a record. *Haddad* at 786. Here, Defendants violated the verification standard of *Haddad* in their refusal to cease collection efforts and continued the foreclosure process in violation of the FDCPA.

84.    Defendant FATIC went ahead with the foreclosure in violation of Federal law and contrary to the Sixth Circuit's holding in *Haddad.* FATIC's continued collection efforts further damaged the Plaintiffs' financial and public reputation without properly validating the debt as required by Federal law.

85.   Defendants sought payments in all three letters attached hereto, including "Other Costs" in the amount of $250 on June 5, 2018, at **Exhibit 1**, a "Foreclosure Processing Fee" in the amount of $200 at **Exhibit 2**, and "Estimated Foreclosure Costs" in the amount of $650 at **Exhibit 3** along with the amount owed to the Association, for a total of $1100 in unfounded, unauthorized fees assessed without any basis in law or contract.

86.   The Default amount of $683.59 was placed on the public record with Orange County, improperly indicating that Plaintiffs owed a debt, despite the fact that they had no opportunity to dispute the same as required by law. **Please see Exhibit 1, 2 and 3**. This false debt attributed to Plaintiffs by Defendants was exposed in the public record for all to see without properly validating the debt and in violation of the FDCPA at §1692c(b).

87.   Under Florida Statutes 721.15 (3), the managing entity or Association seeking to foreclose on a Timeshare debt must notify the debtor, at least 60 days prior to turning the matter over to a collection agency, that the purchaser may be liable for the fees of the collection agency and that a lien may result therein:

> (3)   Delinquent assessments may bear interest at the highest rate permitted by law or at some lesser rate established by the managing entity. In addition to such interest, the managing entity may charge an administrative late fee in an amount not to exceed $25 for each delinquent assessment. Any costs of collection, including reasonable collection agency fees and reasonable attorney's fees, incurred in the collection of a delinquent assessment shall be paid by the purchaser and shall be secured by a lien in favor of the managing entity upon the timeshare interest with respect to which the delinquent assessment has been incurred; however, in the event that a managing entity turns the matter over to a collection agency, the managing entity must advise the purchaser at least 60 days prior to turning the matter over to the collection agency that the purchaser may be liable for the fees of the collection agency and that a lien may result therefrom.

88.   The first letter that Plaintiffs received from Defendant DRM was the "Final Notice" letter on or about February 14, 2018, at **Exhibit 6**. Although the various letters and notices of intent to file liens and foreclose under the Florida Timeshare statute were sent to Plaintiffs,

Defendants did not notify Plaintiffs more than 60 days in advance of the letter received on February 14, 2018, that they would liable in any way for collection agency fees or costs.

89.    If the 60-day window began to run from the date of that "Final Notice" letter attached at **Exhibit 6,** then the debt collection letter attached at **Exhibit 1** from both Defendants would have had to occur after April 14, 2018, in order for Defendants to have any remotely conceivable argument regarding Plaintiffs' liability for arbitrary collection fees. Instead, Defendants ignored the Florida Timeshare law—upon which Defendants rely in their correspondence—and sent the first letter of an intent to lien/foreclose on April 6, 2018. See **Exhibit 1**. This would eliminate any reliance Defendants place upon their legal rights to assess the "other costs" and foreclosure processing fees of $1100 they are seeking from Plaintiffs at **Exhibits 1, 2 and 3**.

90.    Defendant FATIC was, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by 15 U.S.C. § 1692a (6), as stated in its letters at **Exhibits 1, 2, and 3**. Defendant FATIC's central and only purpose as Trustee was to take the Plaintiffs' money and property through the use of foreclosure actions and the assessment of arbitrary, unauthorized "other costs" and collection fees.

91.    Upon information and belief, Defendant DRM also wrote the letter attached to Defendant FATIC's first collection letter to Plaintiffs at **Exhibit 1**.

92.    Defendants are perpetrating this illegal and wrongful collection and foreclosure scheme throughout the State of Florida in "Batches." Please see an example of one "Batch" from the Four Collection Letter Process." **Please see Exhibit 10**.

93.    Defendants are, at all times relevant to this complaint, a "collection agency" as that term is defined by Florida Statutes, Sections 559.55 (6).

94.     Defendants are not a "creditor" as defined by 15 U.S.C. § 1692a (4), but rather have been brought in by the Association for the purpose of collecting debts.

95.     Defendant DRM's role in the process of collecting maintenance or association fees from Plaintiffs did not start until it first sent the "Final Notice" letter to Plaintiffs. Up until that point, Defendant DRM had no role in the collection of the Plaintiffs' maintenance or association fees; indeed, as discussed above, the "Final Notice" was the very first correspondence of any kind sent to Plaintiffs by DRM. See the letters Plaintiffs received prior to the first letter DRM sent to Plaintiffs.

96.     Defendant FATIC was not part of the collection process until April 6, 2018, as shown at **Exhibit 1.** FATIC's collection activities were central to its role as Trustee in the instant matter and were not incidental to any other responsibilities. Defendants were brought in by the Association for the sole purpose of collecting money and pursuing foreclosure actions, both of which fall squarely within the purview of the FDCPA and FCCPA

97.     Defendants' letters attached hereto as **Exhibits 1, 2, and 3 and 6**, are "communications" as defined by the FDCPA and FCCPA. The alleged debt at issue arose out of a transaction in which the money, property, insurance, or services at issue are primarily for personal, family, or household purposes; in other words, "consumer debt" within the meaning of the aforementioned statutes.

98.     Defendants are exposing Plaintiffs' private financial information to third-parties and the public in general in violation of 15 U.S.C. §1692c(b), including an alleged debt that includes arbitrary, unauthorized, unsubstantiated amounts that Defendants claim are owed despite having clearly deprived Plaintiffs of their rights to dispute and verify the same under the FDCPA.

99.    Defendants are utilizing this same unlawful "Four Letter Collection Process" throughout the State of Florida and charging the same $1100 in "other costs" and fees, with no authorization of justification, regardless of each debtor's alleged default amount and without properly notifying consumers of their dispute and verification rights as required by Federal law under 15 U.S.C.§ 1692g and 15 U.S.C.§ 1692g(b).

100.   Pursuant to 15 U.S.C.§ 1692n, the FDCPA does not preempt state laws unless and only to the extent "those laws are inconsistent with any provisions of this subchapter."

**§ 816.  Relation to State laws [15 USC 1692n]**

This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, *a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.*

101.   It is the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 119 (2d Cir. 1998).  "A debt collector must comply with the FDCPA while complying with a state foreclosure law." *Id.* And, as initially discussed at Paragraph 17, *supra*, "in applying and construing" the state debt collection law applicable in this case, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Florida Statutes at 559.77(5).

102. The Florida Timeshare Statute does not expressly afford any remedies to Plaintiff for the damage done to her public reputation through Defendants' unlawful and improper collection efforts and resulting violations of state and federal law.

103. Plaintiffs have suffered an injury in fact and still face, or have been subject to, damage to their financial and public reputation, recording costs, and increased attorney fees as a result of Defendants' collection threats and demand for payment shown in **Exhibits 1, 2, 3, and 6,** and did suffer such injuries stated here and in Paragraphs 3, 5, and 40 through Paragraph 100 as stated above because of the Defendant's unlawful and improper debt collection activities, including Defendants' failure to notify Plaintiffs of their Federal right to dispute and verify the debt as well as unlawfully proceeding to foreclose upon personal property in violation of the FDCPA, FCCPA, and Florida's timeshare statute.

## V. DEFENDANTS' POLICIES AND PRACTICES COMPLAINED OF

104. Upon information and belief and the attached Exhibits, it is Defendants' policy and practice through their "Four Letters Collection Process" to send initial written collection communications for its Diamond condo and timeshare clients in the forms attached as **Exhibits 1, 2, 3, and 6** without including the proper dispute and verification notices required by 15 U.S.C. Sec. 1692g(a) and (b).

105. In violation of 15 U.S.C. Sec. 1692f(1) and 15 U.S.C. Sec. 1692e, Defendants, in an effort to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Florida law by also charging "Other Costs" of $250 on all debtors that receive their "Notice of Intent to Lien" letters when communicating a demand for payment and that the letter is a an attempt to collect a debt. This $250 amount bears no

connection to the amount of the alleged debt and does not arise from any contractual obligation; it is an entirely arbitrary fee assessed by Defendants in violation of federal and state law.

106.  The Defendants' collection attempts discussed herein are made to the competitive disadvantage of those law-abiding debt collectors who have chosen to refrain from using those same unlawful debt collection practices, which violate 15 U.S.C. Sec. 1692f(1), 15 U.S.C. Sec. 1692e, 15 U.S.C. Sec. 1692e(2)(A), 15 U.S.C. Sec. 1692g(a) and 15 U.S.C. Sec. 1692g(b).

107.  The acts and omissions of Defendants, done in an effort to collect the alleged debts from Plaintiffs and those similarly situated timeshare owners receiving the same types of correspondence shown at through **Exhibits 1, 2, 3, and 6** were done intentionally and willfully.

108.  Defendants are following the same plan and practice for obtaining "other costs" and collection fees from many class members without properly notifying any of them of their rights to dispute the debts and seek verification of the same as required by the FDCPA and FCCPA. **Please see Examples at Exhibit 10**.

## VI. CLASS ACTION ALLEGATIONS

109.  This action is brought as a class action as Defendants are following the same practices discussed above in filing improper notices of liens, foreclosing on those liens in contravention to Florida law, and charging arbitrary, unauthorized fees and costs throughout the State of Florida and in flagrant violation of federal and state debt collection laws.  Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

110.  With respect to the Plaintiff **FDCPA Class**, this claim is brought on behalf of a class of (a) all persons in the State of Florida; (b) to whom Defendants sent a written communication in the forms attached as **Exhibits 1, 2, 3, and 6;** (c) in connection with

Defendants' attempt to collect a debt; (d) which written communications violate the FDCPA by not properly notifying recipients of their rights to dispute the debts and seek verification of the same as required by the FDCPA at 15 U.S.C. Sec. 1692g(a) and (b); (e) while seeking to collect "Other Costs" and foreclosure fees without any basis or authorization in violation of 15 U.S.C. § 1692f(1) and 15 U.S.C. Sec. 1692e; and (f)  during a period beginning one year prior to the filing of this action and ending upon the service of this amended complaint.

111.  With respect to the Plaintiff **FCCPA Class**, this claim is brought on behalf of a class of (a) all persons in the State of Florida; (b) to whom Defendants sent a written communication in the forms attached as **Exhibits 1, 2, 3, and 6;** (c) in connection with Defendants' attempt to collect a debt; (d) which written communications violate the FCCPA; (e) within a period of time of two years up to the date of the filing of this lawsuit by:

a.      Violating 559.72 (14) by threatening to publish or post, threaten to publish or post, or cause to be published or posted before the general public the debts of Plaintiffs that are false amounts for the purpose of enforcing or attempting to enforce collection of consumer debts; **See Exhibits 1, 2, 3 and 6**;

b.      Violating 559.72 (9) by threatening to enforce a debt when such person knows that the debt is not legitimate and continues to collect on the debt and contacted Plaintiff without having validated or verified the debt; **See Exhibits 1,2,3 and 6**;

c.      Violating 559.72 (5) by disclosing to the public about the disputed with no legitimate legal or reasonable reason to do so; **See Exhibits 1, 2, 3 and 6**; and

d.      Violating 559.72 (10) by communicating with Plaintiff with the threats to file public Claim of Liens based on false debt amounts without providing Plaintiff with their Federal Rights of Verification and Dispute to prevent the publication of the debts through a Claim of Lien.

**Please see letters 1,2, 3 and 6**.

112.   The identities of all class members are readily ascertainable from the records of Defendants and the Creditor they collect for. Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

113.   There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members.  The principal issues are whether the Defendant's written communications, in the form attached as **Exhibit 1, 2, 3 and 6**, violates the FDCPA and FCCPA as stated above.

114.   The Plaintiffs' claims are typical of the class members, as all are based upon the same facts, legal theories, and form letters sent to all similarly situated timeshare debtors by Defendants; indeed, Defendants even unlawfully assessed the same $1100 in unauthorized fees and "other costs," regardless of the amount of each prospective Plaintiff's default amount. The named Plaintiffs will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint.  The named Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and numerous class actions, and neither the named Plaintiffs nor their attorneys have any interests which might cause them not to vigorously pursue this action.

115.   This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

**Numerosity:**  Upon information and belief, the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical;

**Common Questions Predominate:**  Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members.  The principal issues are whether the Defendant's written communications, in the form attached as **Exhibits 1, 2, 3, and 6**, violate the FDCPA and FCCPA;

**Typicality:**  The Plaintiffs' claims are typical of the claims of the class members.  Plaintiffs and all members of the Plaintiff Classes have virtually identical claims arising out of the Defendants common uniform course of unlawful conduct complained of herein;

**Adequacy:**  The named Plaintiffs will fairly and adequately protect the interests of the class members insofar as Plaintiffs have no interests that are adverse to the rest of the class members. The named Plaintiffs are committed to vigorously litigating this matter.  Plaintiffs have also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.  Neither the Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit;

**Superiority:**  A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would entail.

**Asserted Issue of Law Common to All Class Members:**   Whether Defendants' form letters sent to all Florida residents made misrepresentations, failed to comply with federal law and charged unauthorized fees and costs in violating the FDCPA and FCCPA.

116.   Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members with virtually identical claims create a risk of inconsistent or varying adjudications which could establish inconsistent precedent for Defendants which, upon information and belief, continue to collect debts throughout the State of Florida by unlawful means.

117.   Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

118.   Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

119.   The class would tentatively consist of:

All Florida Timeshare owners with a "Floating Vacation Ownership" that are receiving one or all of the above "Four Letter Collection Process" letters at **Exhibits 1, 2, 3, 6 and 10** from Defendants without the letters informing such timeshare owners of their rights to dispute the debt and seek verification of the same as required by 15 U.S.C. §1692g and 15 U.S.C. §1692g(b) and, as a result, cause such timeshare owners to face unauthorized collection and foreclosure costs in violation of 15 U.S.C. §1692f(1) as well as publication of those same false or unauthorize debts on the public record with the resulting damage to their public and financial reputation.

## VII. FIRST CAUSE OF ACTION

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

120.  Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein

121.  Defendants violated the FDCPA. Defendant's violation, with respect to their written communications in the form attached as **Exhibits 1, 2 and 3 and 6** include, but are not limited to, the following:

a.      Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

b.      Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A) in **Exhibits 1, 2, and 3**;

c.      Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. §1692e(2)(B);

d.      Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e (10);

e.      Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f (1) by seeking unlawful, non-judicial foreclosure fees and costs, unauthorized by contract or state law, without providing notice of Plaintiff's right to dispute and verify the debt as required by 15 U.S.C. § 1692g(a) (1-5) and 15 U.S.C. § 1692g(b);

f.      Threatening to record false debts and expose private information to third parties and the public in general in violation of 15 U.S.C. §1692c(b) through **Exhibits 1, 2, 3 and 6**;

g.      Threatening and pursuing foreclosure on property, and demanding that Plaintiff pay

arbitrary, unsubstantiated additional extra costs and fees associated therewith in violation of 15 U.S.C. § 1692f (6); and

h.      Pursuing debt collection in violation of 15 U.S.C. § 1692g after having deprived Plaintiff of her right to seek verification and dispute the debts they are being charged and thus entirely depriving Plaintiff and the Plaintiff Class of their rights to have Defendant cease and desist from making further collection efforts pursuant to 15 U.S.C. § 1692g(b).

## VIII.  SECOND CAUSE OF ACTION

### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

122.  Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

123.  Defendants violated Florida Statutes 559.72(9), 559.72(13), 559.72(14), and 559.72(5) as evidenced by **Exhibits 1, 2, 3, and 6,** including that attempt to collect recording costs, "Other Costs" and foreclosure fees of up to $1100, without any justifiable basis, and relating to a foreclosure and lien that are not permitted by the Florida Timeshare Statute (within 60 days or under Fl. St. 721.16(6)) and do not arise from any contractual obligation; indeed, the Declaration attached hereto at **Exhibit 5** plainly describes an ownership interest that is considered personal property, not real property, under Florida law.

## IX. PRAYER FOR RELIEF

124.  WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor as follows:

A.      **For the FIRST CAUSE OF ACTION**:

a)      Statutory and Actual damages for Plaintiffs in the amount of $1,000.00 pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B);

b)     Statutory damages for the members of the FDCPA Class, *pro rata,* in the amount of the lesser of $500,000.00 or one percent of the net worth of Defendants pursuant to 15 U.S.C. 1692k(a)(2)(B);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and;

d)     Such further relief as the court deems just and proper.

B.    **For the SECOND CAUSE OF ACTION**:

a)     Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes; and

b)     Adjudging that Defendants violated Fla. Stat. § 559.72(9), (14), (5), and (13) with respect to Plaintiffs and the class they seek to represent;

c)     Awarding Plaintiffs and the class actual damages, pursuant to Fla. Stat. § 559.77(2); and

d)     Awarding Plaintiffs additional statutory damages, pursuant to Fla. Stat. § 559.77(2), in the amount of $1,000.00; and

e)     Awarding an aggregate award of additional statutory damages up to the lesser of $500,000.00 or one percent of the Defendants' net worth for all remaining class members, pursuant to Fla. Stat. § 559.77(2); and

f)     Awarding Plaintiffs and the class punitive damages, pursuant to Fla. Stat. § 559.77(2); and

g)     Awarding Plaintiffs and the class such equitable relief as the Court deems necessary or proper, including enjoining Defendants from further violations of the

FCCPA through the letters at **Exhibits 1, 2, 3** and, pursuant to Fla. Stat. §

559.77(2); and

h)       Awarding Plaintiffs and the class counsel reasonable attorneys' fees and costs

incurred in this action pursuant to Fla. Stat. § 559.77(2) and Rule 23; and

i)       Awarding Plaintiffs and the class pre-judgment and post judgment interest as

permissible by law; and

j)       Awarding such other and further relief as the Court may deem just and proper.

## X. JURY DEMAND

Plaintiffs hereby demand that this AMENDED CLASS ACTION be tried before a

Jury.


Respectfully submitted this 31st day of October 2018.

/s/ Brian P. Parker_____
Brian P. Parker
**DC Capital Law, LLP**
Florida Bar No. 0980668
700 12th Street NW Ste 700
Washington, D.C. 20005
202-793-4433
bparker@dccapitallaw.com
*Attorney for the Plaintiffs and*
*Potential Plaintiff Class Members*