**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAVID E. BARTINE and
JUDITH S. BARTINE,

        Plaintiffs,

v.                                    Case No:  6:18-cv-1364-Orl-40TBS

DIAMOND RESORTS MANAGEMENT,
INC. and FIRST AMERICAN TITLE
INSRUANCE COMPANY,

        Defendants.

_____

## <u>ORDER</u>

      This cause is before the Court on the Motion to Dismiss (Doc. 44) filed by Defendant Diamond Resorts Management, Inc. ("**DRM**"), and the Motion to Dismiss (Doc. 46) filed by Defendant First American Title Insurance Company ("**First American**"). Upon consideration, Defendants' motions are due to be granted.

**I.**    **BACKGROUND**

      This action arises from the foreclosure of Plaintiffs' timeshare interest through the non-judicial trustee foreclosure process set forth in the Florida Vacation Plan and Timesharing Act ("**Timeshare Act**"), Fla. Stat. § 721.855. The Court briefly summarizes this process and then provides the factual background of this case.

**A. Trustee Foreclosure Process**

      Pursuant to the Timeshare Act, a managing entity has a "lien on a timeshare interest for any assessment levied against that timeshare interest from the date such assessment becomes due." *Id.* § 721.16(1). The assessment lien becomes "effective from

1

the date of recording a claim of lien in the official records of the county . . .  in which the timeshare interest is located." *Id.* § 721.16(3). The managing entity "may initiate a trustee procedure to foreclose an assessment lien under [§] 721.855." *Id.* § 721.16(2). Section 721.16 only exempts from its scope "personal property timeshare plans." *Id.* § 721.16(6).

To initiate the trustee foreclosure procedure for an assessment lien, the lienholder must first record a claim of lien and provide notice by sending the obligor a "notice of intent to file a lien." Fla. Stat. § 721.855(2)(b). For a timeshare condominium such as the one at issue here, the notice must comply with the requirements of § 718.121. *Id.* That section requires the notice to "be in substantially the following form:"

NOTICE OF INTENT
TO RECORD A CLAIM OF LIEN

RE: Unit   of   (name of association)
The following amounts are currently due on your account to   (name of association)  , and must be paid within 30 days after your receipt of this letter. This letter shall serve as the association's notice of intent to record a Claim of Lien against your property no sooner than 30 days after your receipt of this letter, unless you pay in full the amounts set forth below:

Maintenance due   (dates)                      $ .
Late fee, if applicable                   $ .
Interest through   (dates)  *                   $ .
Certified mail charges                   $ .
Other costs                   $ .

TOTAL OUTSTANDING                   $ .
*Interest accrues at the rate of   percent per annum.

Fla. Stat. § 721.121(4).

Once the lienholder serves the notice of intent to file a lien on the obligor, the lienholder must deliver an affidavit to the trustee that identifies, *inter alia*, the obligor, their ownership interest, the details of the obligor's default, and the amounts secured by the lien. *Id.* § 721.855(2)(b).

The trustee then notifies the obligor that it intends to foreclose by sending a "notice of default and intent to foreclose." *Id.* § 721.855(5). This notice must:

> 1. . . . identify the obligor, the notice address of the obligor, the legal description of the timeshare interest, the nature of the default, the amounts secured by the lien, and a per diem amount to account for further accrual of the amounts secured by the lien and shall state the method by which the obligor may cure the default, including the period of time after the date of the notice of default and intent to foreclose within which the obligor may cure the default[;]

> 2. . . . include an objection form with which the obligor can object to the use of the trustee foreclosure procedure by signing and returning the objection form to the trustee[; and]"

> 3. . . . contain a statement in substantially the following form:

> If you fail to cure the default as set forth in this notice or take other appropriate action with regard to this foreclosure matter, you risk losing ownership of your timeshare interest through the trustee foreclosure procedure established in section 721.855, Florida Statutes. You may choose to sign and send to the trustee the enclosed objection form, exercising your right to object to the use of the trustee foreclosure procedure. Upon the trustee's receipt of your signed objection form, the foreclosure of the lien with respect to the default specified in this notice shall be subject to the judicial foreclosure procedure only. You have the right to cure your default in the manner set forth in this notice at any time before the trustee's sale of your timeshare interest. If you do not object to the use of the trustee foreclosure procedure, you will not be subject to a deficiency judgment even if the proceeds from the sale of your timeshare interest are insufficient to offset the amounts secured by the lien.

*Id.* § 721.855(5)(a)(1)–(3).

At least thirty days after serving the notice of default and intent to foreclose, the trustee must serve a final notice on the obligor, called a "notice of sale." *Id.* § 721.855(6). The notice must set forth:

> 1. The name and notice addresses of the obligor and any junior interestholder.
> 2. The legal description of the timeshare interest.
> 3. The name and address of the trustee.
> 4. A description of the default that is the basis for the foreclosure.
> 5. The official records book and page numbers where the claim of lien is recorded.
> 6. The amounts secured by the lien and a per diem amount to account for further accrual of the amounts secured by the lien.
> 7. The date, location, and starting time of the trustee's sale.
> 8. The right of and the method by which the obligor may cure the default or the right of any junior interestholder to redeem its interest up to the date the trustee issues the certificate of sale in accordance with paragraph (7)(f).

*Id.* § 721.855(6)(a).

The trustee must record the notice of sale and send a copy to the obligor and publish the notice of sale in a newspaper of general circulation. *Id.* § 721.855(6)(b), (d). After completing these steps, the trustee is authorized to sell the timeshare interest. *Id.* § 721.855(4).

### B. Factual Background

On or about May 10, 1999, David E. Bartine and Judith S. Bartine ("**Plaintiffs**") received a warranty deed ("**Deed"**) conveying them a condominium parcel/timeshare unit at Cypress Pointe Resort II ("**Cypress Pointe Resort**"). (Doc. 28, ¶ 28; Doc. 28-1, p. 19). Years later, Plaintiffs defaulted on the assessment fees for their timeshare and received

a Final Notice from Defendant DRM—the property manager for Cypress Pointe Resort II Condominium Association, Inc. ("**Association**") (Doc. 28, ¶¶ 16, 34, 56; Doc. 50, p. 2).

The Final Notice informed Plaintiffs that: (1) their "annual assessment [were] due January 1, 2018"; (2) they owed $553.32; and (3) they could "remedy the default" "within [thirty] 30 days" by "bringing [their] account current" or "allow the account to remain delinquent," in which case "a lien [would] be filed in [their] name[s]." (Doc. 28-1, p. 31; Doc. 28, ¶ 56). Plaintiffs do not allege that they remedied the default. (*See generally* Doc. 28).

Months later, DRM prepared a Notice of Intent to Record a Claim of Lien ("**Lien Notice**") dated April 6, 2018. (Doc. 28-1, pp. 2–4). Defendant First American—the trustee appointed by the Association—transmitted the Lien Notice to Plaintiffs.[1] (*Id.* at p. 2; Doc. 28, ¶ 61). The Lien Notice stated, in pertinent part:

**NOTICE OF INTENT
TO RECORD A CLAIM OF LIEN**

RE: Unit D27AB / Week 22 / Odd Year Biennial Timeshare Interest of Cypress Pointe Resort II
    Condominium Association, Inc., a Florida not-for-profit corporation.

This Notice is being sent on behalf Cypress Pointe Resort II Condominium Association, Inc., a Florida not-for-profit corporation, ("Association").

The following amounts are currently due on your account to Cypress Pointe Resort II Condominium Association, Inc., a Florida not-for-profit corporation, and must be paid within 30 days after your receipt of this letter. This letter shall serve as the association's notice of intent to record a Claim of Lien against your property no sooner than 30 days after your receipt of this letter, unless you pay in full the amounts set forth below:

Maintenance due  (01/01/2018-present)   $ 1,367.18

Late fee, if applicable   $ 0.00

Interest through  (01/01/2018-present) *  $ 0.00

Certified mail charges:   $ 0.00

Other Costs   $ 250.00

---

[1]   Plaintiffs do not dispute that First American was acting in its capacity as the trustee for the Association. (Doc. 28, ¶¶ 78, 96). Furthermore, First American attached the publicly recorded Notice of Appointment of Trustee to its first motion to dismiss. (*See* Doc. 24, pp. 22–23); *see also Lapinski v. St. Croix Condo. Ass'n*, Inc., 2017 WL 2869537, at *5 n.2 (M.D. Fla. May 24, 2017) (court may take judicial notice of documents of public record)).

TOTAL OUTSTANDING     $ 1,367.18, plus Other Costs shown above

*Interest accrues at the rate of zero percent per annum.

Note: The amount of maintenance fees due within thirty (30) days of the receipt of this letter may differ from the amount that will be secured by the Claim of Lien.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.  NOTWITHSTANDING THE FOREGOING, TO THE EXTENT THAT ANY DEBT ASSOCIATED WITH ANY OF THE ABOVE STATED AMOUNTS MAY HAVE BEEN DISCHARGED IN A BANKRUPTCY PROCEEDING UNDER TITLE 11 OF THE UNITED STATES CODE, PLEASE BE ADVISED THAT THIS IS AN ACTION TO COLLECT A DEBT IN REM AGAINST THE PROPERTY ENCUMBERED BY SUCH LIEN AND NOT IN PERSONAM AGAINST ANY OBLIGOR.

Sincerely,

Diamond Resorts Management, Inc.,
on behalf of Cypress Pointe Resort II Condominium
Association, Inc., a Florida not-for-profit corporation

(Doc. 28-1, pp. 2, 4).

On May 17, 2018, First American sent Plaintiffs a Notice of Default and Intent to Foreclose ("**Notice of Default**"). (Doc. 28-1, pp. 7–12). The Notice of Default advised Plaintiffs that Association had recorded a Claim of Lien against their timeshare property for past-due assessments, fees, and taxes pursuant to the terms of the Declaration of Condominium for Cypress Pointe Resort II ("**Declaration**") and "sections 721.16 and 192.037, Florida Statutes." (Doc. 28-1, p. 7). The notice also advised Plaintiffs that if they failed to cure the default, they "risk[e]d losing ownership of [their] timeshare interest through the trustee foreclosure process established in section 721.855, Florida Statutes." (*Id.*).

Two months later, First American sent Plaintiffs a Trustee's Notice of Sale ("**Sale Notice**"), notifying them that it  would conduct a trustee's sale of their timeshare on August 1, 2018, and that Plaintiffs and any junior lienholders had the right to cure Plaintiffs' default and redeem their respective interest up until that date. (*Id.* at pp. 14–17).

Plaintiffs now bring a putative class action against DRM and First American, claiming they violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("**FDCPA**"), and its Florida counterpart, the Florida Consumer Collection

Practices Act, Fla. Stat. § 559.55 et seq. ("**FCCPA**"), by "threaten[ing]" to "file[] baseless, unverified liens" against them, assess costs that "have no basis in law or fact," and foreclose on their "*in personam* [timeshare] interest" through an *in rem* proceeding. (Doc. 28, ¶¶ 2, 3, 32, 53, 54, 55, 121, 123).

As discussed in greater detail below, Defendants move to dismiss Plaintiffs claims for failure to state a claim pursuant to Federal Rule 12(b)(6). (Docs. 44, 46). With Plaintiffs responses (Docs. 48, 50), Defendants' replies (Docs. 56, 57), and Plaintiffs surreplies (Docs. 64, 66), this matter is ripe for adjudication.

## II.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To assess the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See id.*; *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016).

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S.

at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam). In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

In resolving Defendants' motions, the Court first addresses the overarching theory of Plaintiffs' case. The Court then turns to Plaintiffs' FDCPA and FCCPA claims.

### A.  Plaintiffs' Theory

Plaintiffs contend that their timeshare interest was personal property, not real property, and therefore, could only be foreclosed *in personam*. (Doc. 28, ¶¶ 3, 32, 49, 50). Hence, Plaintiffs claim that Defendants "improperly and impermissibly foreclose[d] on [their] timeshare property interests . . . using an *in rem* proceeding . . . in flagrant violation of both the FDCPA . . . and the FCCPA." (*Id.* ¶¶ 3, 32, 50). The Court disagrees.

The Timeshare Act establishes, as a matter of law, that Plaintiffs' timeshare interests were real property and not personal property. The Timeshare Act provides three basic forms of timeshare ownership or timeshare interests: a "timeshare estate,"

"timeshare license," and "personal property timeshare interests." *See* Fla. Stat. § 721.05(36).

Relevant to this case, a timeshare estate is defined as "a right to occupy a timeshare unit, coupled with a freehold estate or an estate for years with a future interest in a timeshare property or a specified portion thereof." *Id.* § 721.05(34). A timeshare estate is statutorily considered "a parcel of real property." *Id.* A personal property timeshare interest, on the other hand, is "right to occupy an accommodation located on or in or comprised of personal property that is not permanently affixed to real property." Fla. Stat. § 721.05(28).[2]

In this case, the Deed conveyed to Plaintiffs:

1 Timeshare Interest(s) consisting of 1 undivided 1/102 interest(s) in fee simple as tenant in common in and to the below-described Condominium Parcel, together with a corresponding undivided interest in the Common Furnishings which are appurtenant to such Condominium Parcel, as well as the recurring (i) exclusive right every alternate calendar year to reserve, use and occupy an Assigned Unit within Cypress Pointe Resort II, A Condominium (the "Project"); (ii) exclusive right to use and enjoy the Limited Common Elements and Common Furnishings located within or otherwise appurtenant to such Assigned Unit; and (iii) non-exclusive right to use and enjoy the Common Elements of the Project, for their intended purposes, during the Vacation Week or one (1) or more Split Vacation Periods (up to a maximum of seven (7) days and nights) in the Designated Season identified below as shall properly have been reserved in accordance with the provisions of the then-current Rules and Regulations promulgated by The Cypress Pointe Resort II Condominium Association, Inc., all pursuant to the Declaration of Condominium for Cypress Pointe Resort II, A Condominium, duly recorded in the Public Records of Orange County, Florida, in Official Records Book 5044, at Page 3557, as thereafter amended (the "Declaration").

---

[2] Plaintiffs received a timeshare unit affixed to a condominium. (*See* Doc. 28, p. 19 (deeding Plaintiffs a "condominium parcel")). A condominium is indisputably real property. (*See* Fla. Stat. §§ 718.103(11) (defining condominium as a "form of ownership of real property . . . which is comprised entirely of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, an undivided share in common elements")). Therefore, Plaintiffs' timeshare could not have been personal property.

(Doc. 28-1, p. 19). Put simply, Plaintiffs received one fee simple undivided timeshare interest as tenants in common with other owners, together with the exclusive right to occupy their assigned timeshare unit in accordance with the Declaration. Therefore, by statute, Plaintiffs received a timeshare estate and real property. *See* Fla. Stat. § 721.05(34).

Plaintiffs claim that the Deed "is invalid and incapable of transferring any real property interest" to them simply because they owned a "Floating" timeshare interest that was is subject to a "Floating" vacation ownership plan. (Doc. 28, ¶¶ 43–44). Plaintiffs do not cite to any legal authority for support. Instead, Plaintiffs rely on and attach an excerpt of the Declaration, which states, in pertinent part:

**Article VI**
**USE AND OCCUPANCY RIGHTS AND RESTRICTIONS**

\*      \*      \*

6.2.   <u>Occupancy and Constructive Possession of Units Committed to Vacation Ownership.</u>

Notwithstanding any provision of the Project Instruments, including a Timeshare Owner's Warranty Deed and Purchase Contract, to the contrary, no Timeshare Owner shall have the exclusive right to use and occupy the specific Unit identified in his Warranty Deed for any particular Vacation Week . . . unless a specific 'Fixed' Vacation Week is specifically identified in such Timeshare Owner's Warranty Deed. Rather, each Timeshare Owner shall have the recurring exclusive right, either every calendar year or during alternate calendar years, commencing with the calendar year set forth in such Timeshare Owner's Purchase Contract, to use and occupy an Assigned Unit (though not necessarily the specific Unit identified in his Warranty Deed), as well as the Limited Common Elements and Common Furnishing located within such Unit and the non-exclusive right to use and enjoy the Common Elements of the Project, for their intended purposes, during (i) in the case of "Floating" Timeshare Interests, (A) such Vacation Week or one (1) or more Split Vacation Periods

> (up to a maximum of seven (7) days and nights) with respect to Timeshare Owners who purchase entire Vacation Weeks; or (B) a Split Vacation Period with respect to Timeshare Owners who purchase a three (3) or four (4) consecutive day and night Split Vacation Period, in the Designated Season set forth in such Timeshare Owners Warranty Deed, as shall properly have been reserved by him in accordance with the provisions of the then-current Rules and Regulations, without regard for the specific Vacation Week number identified in his Warranty Deed; or (ii) in the case of "Fixed" Timeshare Interests, such Vacation Week as is specifically identified in such Timeshare Owner's Warranty Deed and scheduled in <u>Exhibit "G"</u> hereof. . . .

(Doc. 28-1, pp. 27–28).

However, this Section does not invalidate or alter Plaintiffs' timeshare ownership. It merely outlines the procedures regarding Plaintiffs "use and occupancy" of their assigned timeshare unit. In fact, Section 6.2 does not address timeshare ownership at all. The only portion of the Declaration that speaks to timeshare ownership is Article IV, Section 4.1. (*See* Doc. 51-2, pp. 19–20).

Section 4.1 of the Declaration expressly states that timeshare estates "may be created with respect to some or all of the units in the project." (Doc. 51-2, p. 19). That is exactly what Plaintiffs received. The Deed conveyed to Plaintiffs a fee simple timeshare interest at Cypress Point Resort coupled with the right to occupy a timeshare unit, subject to the covenants in the Declaration. (Doc. 28, p. 19).

Although Plaintiffs and other "Floating" timeshare owners did not have "the exclusive right to use and occupy *the specific Unit identified in his Warranty Deed for any particular Vacation Week*," they still had an "exclusive right to . . . use and occupy an Assigned Unit" in accordance with the Declaration. (Doc. 28-1, pp. 28–29). This is all Florida law requires to create a timeshare estate. *See* Fla. Stat. § 721.05(34) ("Timeshare

11

estate means *a right to occupy a timeshare unit*, . . . coupled with an ownership interest in a condominium unit pursuant to s. 718.103 . . .") (emphasis added). As such, the Court rejects Plaintiffs argument that the Declaration invalidated or altered their deeded timeshare interest.[3]

Plaintiffs argue that the Federal Trade Commission ("**FTC**") guidance reveals that their timeshare interest is "a personal property interest rather than real property interest." (Doc. 28, ¶¶ 30, 47). As support, Plaintiffs rely on the following excerpts from the FTC's website:

> **Deeded Timeshare Ownership**. In a timeshare, you either own your vacation unit for the rest of your life, for the number of years spelled out in your purchase contract, or until you sell it. Your interest is legally considered real property. You buy the right to use a specific unit at a specific time every year, and you may rent, sell, exchange, or bequeath your specific timeshare unit. You and the other timeshare owners collectively own the resort property. . . .
>
> **"Right to Use" Vacation Interval Option**. In this option, a developer owns the resort, which is made up of condominiums or units. Each condo or unit is divided into "intervals" — either by weeks or the equivalent in points. You purchase the right to use an interval at the resort for a specific number of years — typically between 10 and 50 years. The interest you own is legally considered personal property. The specific unit you use at the resort may not be the same each year. . . .
>
> Within the "right to use" option, several plans can affect your ability to use a unit:
>
> - **Fixed or Floating Time**. In a fixed time option, you buy the unit for use during a specific week of the year. In a floating time, option, you use the unit within a certain season of the year, reserving the

---

3   In fact, "[f]loating time is the structure almost always used for a timeshare resort that defines the timeshare estates sold in terms of an undivided tenant-in-common interest." *See* Robert S. Freedman, Timeshare Condominiums, Florida Condominium and Community Association Law, The Florida Bar, Chapter 6 § 6(C) (4th ed. 2018).

> time you want in advance; confirmation typically is
> provided on a first-come, first-served basis.

(Doc. 28-1, pp. 20–21).

The FTC's online "guidance" does not determine the type of property interest conveyed by a Deed. But even if it did, it belies Plaintiffs' argument. The FTC website states that a "right to use" timeshare interest is granted only "for a specific number of years." (*Id.* at p. 21). Here, Plaintiffs were deeded a perpetual—not a temporary—right to occupy their timeshare unit. (*Id.* at p. 19). Therefore, even by the terms of the FTC website, Plaintiffs were a deeded timeshare owner and her timeshare interests "were legally considered real property." (*Id.* at p. 20).

Accordingly, the Court finds that Plaintiffs' timeshare interest was not personal property, but instead, real property subject to the *in rem*, non-judicial trustee foreclosure that Defendants ultimately conducted.[4] The Court now turns to Plaintiffs' FDCPA and FCCPA claims and Defendants dismissal arguments.

## B. FDCPA and FCCPA Claims

---

[4] Outside the pleadings, Plaintiffs argue that Defendants improperly conducted a trustee foreclosure because, pursuant to § 721.855, Florida Statutes, "the Declaration must specifically provide for that process, in order for it to be an available remedy." (Doc. 56, p. 13). Plaintiffs are wrong. Section 721.855 does not require a timeshare instrument to specifically provide for the trustee foreclosure procedure unless the timeshare instrument "specifically prohibit[s] the use of the trustee foreclosure procedure, or the managing entity otherwise determines that the timeshare instrument should be amended to specifically provide for the use of the trustee foreclosure procedure." Fla. Stat. § 721.855(2)(a)(1). There is no indication that either situations apply here. Therefore, prior to initiating the trustee foreclosure procedure, Defendants were simply required to inform Plaintiffs "in writing that the managing entity ha[d] the right to elect to use the trustee foreclosure procedure with respect to foreclosure of assessment liens." Fla. Stat § 721.855(2)(a)(2). Plaintiffs do not allege that Defendants failed to satisfy this requirement.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692(e). To state a claim under the FDCPA, a plaintiff must allege that: 1) the defendant is a debt collector; (2) he or she was the object of collection activity arising from consumer debt; and (3) the defendant engaged in an act or omission prohibited by the FDCPA or FCCPA. *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1290 (M.D. Fla. 2017) (citations omitted).

The FCCPA is the state counterpart to the federal FDCPA, *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010) (per curiam), and "was enacted as a means of regulating the activities of consumer collection agencies within [Florida]," *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). Although the FCCPA is not "restricted to debt collectors," *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1372 (S.D. Fla. 2011), it requires substantially the same elements as the FDCPA to state a claim for relief. *Garrison*, 233 F. Supp. 3d at 1290. In applying and construing the FCCPA, "due consideration and great weight" is given to interpretations of the FDCPA. Fla. Stat. § 559.552; *Lear v. Select Portfolio Servicing, Inc.*, No. 17-62206-CIV, 2018 WL 1960108, at *1 (S.D. Fla. Apr. 25, 2018).

In this instant case, Plaintiffs FDCPA and FCCPA claims rest on the Final Notice, the Lien Notice, the Notice of Default, and the Sale Notice. Plaintiffs allege that Defendants violated the FDCPA with respect to the notice letters by:

a. Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

b. Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A) in Exhibits 1, 2, and 3;

c. Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. §1692e(2)(B);

d. Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e (10);

e. Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f (1) by seeking unlawful, non-judicial foreclosure fees and costs, unauthorized by contract or state law, without providing notice of Plaintiffs' right to dispute and verify the debt as required by 15 U.S.C. § 1692g(a) (1-5) and 15 U.S.C. § 1692g(b);

f. Threatening to record false debts and expose private information to third parties and the public in general in violation of 15 U.S.C. §1692c(b) through Exhibits 1, 2, 3 and 6;

g. Threatening and pursuing foreclosure on property, and demanding that Plaintiff[s] pay arbitrary, unsubstantiated additional extra costs and fees associated therewith in violation of 15 U.S.C. § 1692f (6); and

h. Pursuing debt collection in violation of 15 U.S.C. § 1692g after having deprived Plaintiff[s] of [their] right to seek verification and dispute the debts they are being charged and thus entirely depriving Plaintiff[s] and the Plaintiff[s] Class of their rights to have Defendant[s] cease and desist from making further collection efforts pursuant to 15 U.S.C. § 1692g(b).

(Doc. 28, ¶ 121).

For their FCCPA claims, Plaintiffs allege that:

15

123.  Defendants  violated  Florida  Statutes  559.72(9),
559.72(13),  559.72(14),  and  559.72(5)  as  evidenced  by
Exhibits  1,  2,  3,  and  6,  including  that  attempt  to  collect
recording costs, 'Other Costs' and foreclosure fees of up to
$1100,  without  any  justifiable  basis,  and  relating  to  a
foreclosure and lien that are not permitted by the Florida
Timeshare Statute (within 60 days or under Fl. St. 721.16(6))
and do not arise from any contractual obligation; indeed, the
Declaration attached hereto at Exhibit 5 plainly describes an
ownership interest that is considered personal property, not
real property, under Florida law.

(*Id.* ¶ 123).

Defendants move for dismissal on multiple grounds. The Court begins with the

arguments advanced by First American and then turns to those made by DRM.

### 1.  Defendant First American

First American primarily argues that Plaintiffs' FDCPA and FCCPA claims fail

because the three letters it sent—the Lien Notice,[5] the Notice of Default, and the Sale

Notice ("**Foreclosure Letters**") do not constitute collection activity. For the reasons stated

below, the Court agrees.

The FDCPA and FCCPA only impose liability when an entity is attempting to collect

debt. *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1355 (M.D. Fla. 2012);

*Wood v. Citibank, N.A.*, No. 8:14–cv–2819–T–27EAJ, 2015 WL 3561494, at *3, 5 (M.D.

Fla. June 5, 2015) (stating that for the FDCPA and FCCPA to apply, the challenged

communication must have been made in connection with the collection of a debt); *see*

*also* 15 U.S.C. §§ 1692c–f (proscribing activities taken "in connection with the collection

---

[5]  First American sent the Lien Notice on DRM's behalf, not on its own behalf. (*See* Doc.
28, ¶¶ 61–62; *see also* Doc. 28-1, pp. 2–4). Thus, First American argues that it cannot
be held liable for the Lien Notice. (*See* Doc. 44, p. 8 n.3). As explained below, the Lien
Notice does not constitute debt collection activity, therefore the Court need not reach
this argument.

of debt"); *see* Fla. Stat. § 559.72 (prohibiting enumerated activities taken "[i]n collecting consumer debts").

In *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009),[6] the Eleventh Circuit held that the "enforcement of a security interest through the foreclosure process is not debt collection for the purposes of [FDCPA]," except § 1692f(6).[7] The Eleventh Circuit later revisited this issue in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), explaining that "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." *Id.* at 1218.

In *Reese*, the plaintiff homeowners defaulted on their mortgage loan and the defendant law firm sent them a "dunning notice, which consisted of a cover letter and three documents." *Reese*, 678 F.3d at 1214. The letter "demand[ed] full and immediate payment *of all amounts due*" and threatened that "unless [plaintiffs] pa[id] all amounts due and owing under the Note[,]" attorney's fees "w[ould] be added to the total amount for which collection is sought" and a "foreclosure sale" would be conducted. *Id.* at 1214. Additionally, one of the documents enclosed with the letter specifically stated that the law firm was "*ATTEMPTING* TO COLLECT A DEBT," and another stated that the law firm was "ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT." *Id.* at 1215 (emphasis in original).

---

[6]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[7]   The Amended Complaint does not allege a violation of § 1692f(6). (*See generally* Doc. 28).

"Trying to avoid the unavoidable meaning of its statements," the law firm argued that the letter was not debt collection activity because its "purpose was simply to inform [plaintiffs] that [it] intended to enforce its security deed through the process of non-judicial foreclosure" pursuant to Ga. Code Ann. § 44–14–162.2. *Id.* at 1217. The Eleventh Circuit disagreed, explaining that even though the letter related to the enforcement of a security interest, it also amounted to debt collection activity because "Georgia law does not require a demand for payment of the debt to be included in a notice of foreclosure, but the law firm included one anyway." *Id.* at 1217 (citing Ga. Code Ann. § 44–14–162.2).

Significantly, the *Reese* court did decide not whether the enforcement of a security interest, without more, constitutes debt collection activity. *See id.* at 1215 n.3. But the Supreme Court recently decided a similar issue in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019).

There, the plaintiff defaulted on a mortgage loan and the loan servicer, to whom the mortgage debt had been assigned, initiated nonjudicial foreclosure proceedings. *Id.* at 1035. The plaintiff filed a complaint against a loan servicer and the law firm representing the servicer. *Id.* The plaintiff alleged, among other claims, that the law firm's collection letter violated the FDCPA. *Id.* The Supreme Court disagreed, stating that "a business engaged in no more than . . . [a] nonjudicial foreclosure proceedings, is not a 'debt collector' subject to the main coverage of the FDCPA." *Id.* at 1034. "[T]he [FDCPA] exempts entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions," except § 1692f(6). *Id.* at 1038, 1040.

Applying these principles, the Court finds that the Foreclosure Letters do not amount to debt collection activity and do not fall within the ambit of the FDCPA, except

§ 1692f(6). Attempting to convince the Court otherwise, Plaintiffs argue that the Foreclosure Letters "communicate the collection of debt" like the letter in *Reese*.[8] (Doc. 49, pp. 9–11; Doc. 28, ¶ 22).

But *Reese* is distinguishable. In that case, the law firm included a demand for payment even though Georgia law did not require it. 678 F.3d at 1217. Here, the Foreclosure Letters were required, and largely scripted, by the Florida legislature. In fact, the Timeshare Act explicitly required that the Foreclosure Letters include the information that Plaintiffs take issue with. *Compare* Doc. 28-1 at 2, 3 *with* Fla. Stat. § 718.121(4)); *compare* Doc. 28-1, pp. 7–12 *with* Fla. Stat. § 721.855(5)(a); *compare* Doc. 28-1, pp. 15–18 *with* § 721.855(6)).

These notices protect timeshare owners. *See* Fla. Stat. §§ 721.02, 721.81. "They are entirely different from the harassing communications that the FDCPA was meant to stamp out." *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 574 (9th Cir. 2017), *cert. denied sub nom. Ho v. ReconTrust Co.*, 138 S. Ct. 504 (2017).

To be clear, the Court does not intend to suggest that the enforcement of a security interest grants an entity blanket immunity from the FDCPA. It does not. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019) (enforcing a security interest does not grant an actor blanket immunity from the Act). First American could have violated the FDCPA and FCCPA if it engaged in conduct beyond what Florida law required to enforce

---

[8]   Plaintiffs also rely on *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174–79 (3d Cir. 2015); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 460–65 (6th Cir. 2013); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376–78 (4th Cir. 2006). (*See* Doc. 49, p. 15). The Court declines to consider these cases, as they are unbinding, do not concern the nuances of Florida foreclosure law, and have been abrogated by the Supreme Court's decision in *Obduskey*, 139 S. Ct. 1029.

a security interest. But Plaintiffs do not allege that First American went beyond the statutorily mandated communications.[9] [10]

Therefore, because First American sent the Foreclosure Letters to enforce the security interest on Plaintiffs' timeshare and to facilitate a trustee foreclosure under Florida law, First American did not engage in debt collection activity. *See Obduskey*, 139 S. Ct. at 1040 ("[E]ntities engaged in no more than the 'enforcement of security interests" are exempt from" the prohibitions of the FDCPA); *Warren*, 342 Fed. App'x. at 460 ("[E]nforcement of a security interest through the foreclosure process is not debt collection

---

[9]    To the extent that Plaintiffs argues that the Foreclosure Letters amounted to debt collection activity because First American sought "Other Cost," a "Foreclosure Processing Fee," and "Estimated Foreclosure Costs . . . without any basis in law or contract," their argument fails. (Doc. 28, ¶ 85; Doc. 49, p. 11). As discussed below, Plaintiffs fail to allege sufficient facts to suggest that these fees were unauthorized. (*See infra* note 16 and related text). Furthermore, Florida law required First American to inform Plaintiffs of the amount due on their account and their right to cure. A debtor's right to cure the default and redeem their timeshare interest is conditional on the debtor's "paying the amounts secured by the lien in cash or certified funds to the trustee." Fla. Stat. § 721.855(3)(b). The "amounts secured by the lien" includes, *inter alia*, "any fees or costs incurred by the lienholder or trustee, including any reasonable attorney's fees, trustee's fees, and costs incurred in connection with the default." Fla. Stat. § 721.82(1). Thus, Plaintiffs fail to adequately allege that the inclusion of additional fees transformed the Foreclosure Letters into something more than the enforcement of a security interest. *Park v. Lehman Bros. Bank, FSB*, No. 11–55473, 2017 WL 3309928, at *1 (9th Cir. Aug. 3, 2017); *Martinez v. Trinity Fin. Servs., LLC*, No. 17–cv–03612–LB, 2017 WL 4071386, at *4 (N.D. Cal. Sept. 14, 2017).

[10]   The Court recognizes that the Foreclosure Letters stated: "this action is an attempt to collect a debt." (Doc. 28-1, pp. 4, 8, 16). But "this does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance." *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010); *Vien-Phuong Thi Ho*, 858 F.3d at 574 n.7 (holding a disclaimer in a letter, stating that the sender is "attempting to collect a debt," is not sufficient to create FDCPA liability, because "'debt collector' isn't an elective category" but rather is "determined objectively, based on the activities of the entity in question"); *Alhassid v. Nationstar Mortg. LLC*, No. 18-13676, 2019 WL 2025227, at *2 (11th Cir. May 8, 2019).

for the purposes of [FDCPA]"); *see also Vien-Phuong Ho*, 858 F.3d at 572–573 ("[G]iving notice of a foreclosure sale to a consumer as required by the [state law] does not constitute debt collection activity under the FDCPA"). Accordingly, Plaintiffs' FDCPA and FCCPA claims against First American fail as a matter of law.

## 2.  *Defendant DRM*

DRM primarily argues that it is not a debt collector under the FDCPA because its communications were incidental to its bona fide fiduciary obligations to the Association. DRM also argues that Plaintiffs fail to adequately allege their FCCPA claims. (Doc. 44; Doc. 51-1; Doc. 51-2, Doc. 51-3). The Court addresses each argument in turn.

### a.  Debt Collector

Debt collectors are defined as "any person[s] who use[] any instrumentality of interstate commerce or  the mails in any business the principal purpose of which is the collection of any debts, or who regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Exempted from the definition of a debt collector, however, is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement . . . ." 15 U.S.C. § 1692a(6)(F)(i).

Relying on the Declaration, the Amended and Restated Management Agreement ("**Management Agreement**"), and the By-Laws of Cypress Pointe Resort II Condominium

Association ("**Bylaws**"),[11] Defendants contend that they fall within statutory exception of § 1692a(6)(F)(i). (Doc. 44; Doc. 51-1; Doc. 51-2, Doc. 51-3).

For this exception to apply, two requirements must be met: (1) the entity must have a "fiduciary obligation" to the association; and (2) the entity's collection activity must be "incidental to" its "fiduciary obligation." *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302–1303 (11th Cir. 2012). DRM satisfies both requirements.

The Declaration provides that the Association would engage a manager to undertake the duties, responsibilities, and obligations of managing Cypress Pointe Resort pursuant to a management agreement which provides for management of the condominium. (Doc. 51-2, pp. 31–32). Similarly, the Bylaws state that: "[t]he Board, on behalf of the Association, shall at all times engage a responsible managing agent as the Manager, pursuant to the Management Agreement." (Doc. 51-3, p. 26).

Complying with the Declaration and Bylaws, Cypress Pointe contracted with DRM to manage Cypress Pointe Resort on November 7, 2016. (Doc. 51-1, pp. 2, 19). Pursuant to the Management Agreement, the Association engages DRM "on an exclusive basis, to

---

[11]   The Eleventh Circuit has recognized that a court may take judicial notice of documents attached to a motion to dismiss, *Lagrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), or documents "central to the plaintiff's claim" if its authenticity is not challenged, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Plaintiffs do not dispute that the exhibits submitted by DRM are public record. Nor do Plaintiffs dispute that the exhibits are authentic and central to their claim. As such, the Court takes judicial notice of the exhibits attached to DRM's motion. *See Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1263-64 (M.D. Fla. 2006) (considering a Lease Agreement and Notice of Claim attached to the defendant's motion to dismiss to determine whether the defendant was a debt collector subject to the FDCPA and FCCPA because the exhibits "describe[d] the relationship of parties integral to the resolution of [the plaintiff's] claim").

manage, maintain, and operate the [Cypress Pointe Condominium] and manage and operate the Timeshare Plan in accordance with this Agreement, the Project Documents and Applicable Law" and "assigns to [DRM] to the exclusion of all other persons, all the rights, powers, and duties of the Association and the Board relating to the management, maintenance and operation of the Project and the management and operation of the Timeshare Plan." (Doc. 51-1, pp. 2–3). As discussed below, under the Management Agreement, DRM was obligated to perform a wide-range of duties on the Association's behalf, including, but not limited to the collection of unpaid assessment.

Therefore, the Court concludes that DRM owed a fiduciary obligation to the Association. Florida law supports this conclusion, as it explicitly recognizes that timeshare property management companies, such as DRM, owe fiduciary obligations to the associations whose properties they manage. *See* Flat. Stat. §§ 721.13, 468.4334.

The Court also finds that the collection of unpaid assessments was "incidental" to DRM's "bona fide fiduciary obligation[s]" to the Association. Debt collection is incidental if it is "not central to, or the primary purpose of" a management company's duties. *Harris*, 702 F.3d at 1302 (citations omitted). Here, DRM, not only collected unpaid and past due assessment fees on behalf of the Association, the Management Agreement details a broad range of responsibilities, duties, and powers entrusted to and imposed upon DRM.[12] (*See, e.g.*, Doc. 51-1, pp. 3–10). In fact, the collection of assessments is only one of forty obligations assigned to DRM under the Management Agreement. (*See id.* at pp. 22–23 (providing an extensive list of obligations assigned to DRM)).

---

[12] Likewise, the Bylaws set forth a litany of "powers and duties" delegated to DRM, including overall management, operation, maintenance and repair of the condominium. (Doc. 51-3, pp. 26–29).

Because DRM's collection of past due assessments was incidental to other duties assigned to it by the Association, the Court finds that DRM is exempt as a debt collector under § 1692a(6)(F)(i) of the FDCPA. *See Harris*, 702 F.3d at 1302–1303; *Madura v. Lakebridge Condo. Ass'n Inc.*, No. 807-CV-02274-T-17EAJ, 2009 WL 536537, at *3 (M.D. Fla. Mar. 3, 2009), *aff'd*, 382 F. App'x 862 (11th Cir. 2010);[13] *see also Berndt v. Fairfield Resorts, Inc.*, 339 F. Supp. 2d 1064, 1068 (W.D. Wis. 2004) (holding that a timeshare property manager was exempt under 15 U.S.C. § 1692(a)(6)(F)(i) "[b]ecause the language in the Timeshare Management Agreement designates the [property manager] as the Association's agent," which created a fiduciary relationship, and the "defendant was acting incidentally to a bona fide fiduciary obligation when it collected the maintenance fees on behalf of the Association").[14]

Accordingly, Plaintiffs fail to state a cognizable FDCPA claim against DRM.

b. FCCPA Claims Against DRM

Plaintiffs allege that Defendants violated §§ "559.72(9), 559.72(13), 559.72(14), and 559.72(5)" of the FCCPA. (Doc. 28, ¶ 123). As to DRM, Plaintiffs claim that it violated § 559.72(9) based on the Final Notice it sent and the Lien Notice sent on its behalf. (Doc. 50, pp. 14–15). Plaintiffs claim that DRM violated §§ 559.72(13), 559.72(14), and 559.72(5) based on the Final Notice, the Lien Notice, and the letters that it allegedly

---

[13]   Although *Harris* was decided at the summary judgment stage, it is instructive.

[14]   In *Harris*, the Eleventh Circuit cited to *Berndt* with approval.

"caused" Fair American to send—to wit, the Notice of Default and the Sale Notice. (*Id.* at pp. 15–16).  Plaintiffs' claims fail.[15]

### 1.  Fla. Stat § 559.72(9)

Section 559.72(9) provides that no person shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat § 559.72(9).

Plaintiffs claim that DRM violated § 559.72(9) because the "Other Costs" ($250) in the Lien Notice have "no basis in law or contract." (Doc. 28, ¶¶ 16, 55, 63, 65, 85, 90, 99, 123). Although unclear, Plaintiffs seemingly allege that the amount set forth in the Lien Notice have no basis in law because "the managing entity or [a]ssociation seeking to foreclose on a [t]imeshare debt must notify the debtor, at least sixty days prior to turning the matter over to a collection agency, that the purchaser may be liable for the fees of the collection agency and that a lien may result." (Doc. 28, ¶ 87 (citing Fla. Stat. 721.15(3); *id.* ¶ 123).

According to Plaintiff, the sixty-day window began to run from the date of the Final Notice, therefore, Defendants could not obtain "collection fees" until "after April 14, 2018." (*Id.* ¶¶ 88–89). Plaintiffs claim that "Defendants ignored the [Timeshare Act] . . . and sent the [Lien Notice] on April 6, 2018," thereby "eliminat[ing] . . . their legal rights to assess the 'other costs' and foreclosure processing fees of $1100 they are seeking from Plaintiffs." (*Id.* ¶ 89).

---

[15]  Moreover, as noted above, the Lien Notice, Foreclosure Notice, and the Sale Notice do not amount to debt collection activity and cannot form the basis of Plaintiffs FCCPA claims.

As DRM points out, however, § 718.15(3) plainly states that the sixty-day notice requirement applies only if "a managing entity *turns the matter over to a collection agency.*" Fla. Stat, § 718.15(3) (emphasis added). The Amended Complaint does not allege, and the attached documents do not show, that DRM turned Plaintiffs delinquency over to a collection agency less than sixty days after sending the Final Notice. Indeed, the Lien Notice suggests that DRM—the managing entity—was still handling Plaintiffs' default. (*See* Doc. 28, p. 4; *see also* Doc. 28, ¶ 62 (conceding that the Lien Notice was "written by either Diamond Resorts International or DRM"). Thus, the Court rejects Plaintiffs argument that the "Other Fees" have "no basis in law."

The Court also rejects Plaintiffs argument that the "Other Fees" have "no basis in contract." Plaintiffs ostensibly make this argument because, in their view, the "Declaration . . . plainly describes an ownership interest that is considered personal property, not real property, under Florida law." (Doc. 28, ¶¶ 50, 123). As noted above, however, Plaintiffs' timeshare interests constitute real property and was subject to foreclosure under the Timeshare Act. Accordingly, Plaintiffs' allegations that the $250 in "Other Costs" have "no basis in law or contract" are legal conclusions and do not suffice to state a claim under § 559.72(9) of the FCCPA.[16]

As an alternative basis for its claim, Plaintiffs argue that DRM violated § 559.57(9) of the FCCPA when it sent the Final Notice and Lien Notice and did not "verify and validate [Plaintiffs'] debt pursuant to § 1692g of the FDCPA." (Doc. 50, pp. 14–15). This argument

---

[16] Plaintiffs similarly allege that the $200 "Foreclosure Processing Fee" in the Notice of Default, and the $650 "Estimated Foreclosure Costs" in the Sale Notice have "no basis in law or contract." (Doc. 28 ¶¶ 16, 55, 63, 65, 85, 90, 99, 123). Plaintiffs allegations fail for the same reason they fail with respect to the "Other Costs" set forth in the Lien Notice.

lacks merit. The FCCPA does not require an entity to comply with debt verification procedures of the FDPCA. *See* Fla. Stat. 559.72. Furthermore, "[t]he FDCPA and the FCCPA are not identical, and a violation of one act does not automatically constitute a violation of the other." *Read v. MFP, Inc.*, 85 So.3d 1151, 1153 (Fla. 2d DCA 2012) (citation omitted). "[T]o successfully assert a claim under the FCCPA, a plaintiff must allege a violation of a specific provision of the FCCPA—not a violation of the FDCPA." *Id.* at 1155. Thus, Plaintiffs fail to state a § 559.72(9) claim against DRM.[17]

### 2.  Fla. Stat §§ 559.72(5), (13), and (14)

Section 559.72(5) prohibits a person from "[d]isclos[ing] to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5). Section 559.72(13) states that no person shall "[a]dvertise or threaten to advertise for sale any debt as a means to enforce payment . . .." Section 599.72(14) prohibits a person from "[p]ublishing or post[ing], threaten[ing to publish[ing or post[ing], or caus[ing] to be published or posted before the general public individual names or any list of names of debtors, commonly known as a deadbeat, for the purpose of enforcing or attempting to enforce collection of consumer debts." Fla. Stat. § 559.72(14).

Plaintiffs assert that "DRM's violation of these violated these [sub]sections of stem from its unlawful pursuit of the trustee foreclosure procedures, [was] neither permitted by law nor under [the] Declaration." (Doc. 50, pp. 15–16). There is no support for Plaintiffs' position. The Deed, Declaration, and Timeshare Act plainly show that Plaintiffs' timeshare

---

[17]   For similar reasons, Plaintiffs fail to state their § 559.72 claim against First American.

was real property subject to the trustee foreclosure process that Defendants ultimately conducted. Accordingly, Plaintiffs fail to state a claim against DRM under §§ 559.72(5), (13), and (14) of the FCCPA.[18]

Having found that Plaintiffs fail to adequately allege any of their claims, the Amended Complaint will be dismissed. Based on allegations in the Amended Complaint, the documents attached thereto, and the documents attached to DRM's motion to dismiss, the Court finds that amendment would be futile. As such, the Court will dismiss the Amended Complaint with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment . . . where amendment would be futile").

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motions to Dismiss (Docs. 44, 46) filed by Diamond Resorts Management, Inc., and First American Title Insurance Company are **GRANTED**.

2. The Amended Complaint (Doc. 28) is **DISMISSED WITH PREJUDICE.**

3. The Clerk is **DIRECTED** to close this file.

**DONE AND ORDERED** in Orlando, Florida on June 13, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

---

[18] For similar reasons, Plaintiffs fail to state their claims against First American under §§ 559.72(5), (13), and (14) of the FCCPA.

Copies furnished to:

Counsel of Record
Unrepresented Parties